EDWARD KOLAKOWSKI *et al.*, Plaintiffs-Appellants, *v.* DR. DAVID C. VORIS *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 77-420, 77-565 cons.

Opinion filed June 22, 1979.—Rehearing denied October 11, 1979.

Walter T. Ketchum, of Chicago (William J. Harte, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, and Daniel J. O'Connor, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs filed their complaint seeking damages for injuries following an operation performed by Doctors Voris, Parameswar and Smith on the premises of defendant Mercy Hospital & Medical Center. Following an answer and the submission of interrogatories, depositions and affidavits, Mercy Hospital's motion for summary judgment in its behalf was granted. On appeal, plaintiffs contend that the trial court's granting of summary judgment to Mercy Hospital was erroneous.

The facts pertinent to the disposition of this appeal are as follows. Plaintiff Edward Kolakowski had an extensive medical history of

injuries and pain suffered in his back, right shoulder, and lower extremities. Included in this history was a diagnosis made in 1958 that he had a severe degenerative disease of a lumbar disc of his spine. He underwent a laminectomy and fusion operation, followed by out-patient treatment. His back trouble continued through July of 1972, when his back was re-injured in an automobile accident. In July of 1973 Kolakowski, complaining of pains in his neck and left shoulder, visited his family doctor, Dr. Caserta, who prescribed heat therapy. This did not relieve his pain and on July 17, he was admitted to Mercy Hospital. There he was examined by Dr. David Voris, a neurologist who had been called in by Dr. Caserta. Dr. Voris suggested heat therapy and other treatments to relieve the pain and advised that he avoid further surgery. Kolakowski was discharged from Mercy Hospital on July 27.

Although he continued with heat therapy as Dr. Voris prescribed, Kolakowski's pain continued until it became unbearable. On August 11, he was readmitted to Mercy Hospital and his neck was placed in traction. When this also proved ineffective, Dr. Voris decided to perform a "myelographic study," which is an X-ray of the spinal cord after a contrast medium is injected. Assisted by Dr. Parameswar, Dr. Voris performed this study on August 16. Afterwards, Dr. Voris told Kolakowski that the myelogram had shown a significant defect and "a chance of spinal cord involvement as well as nerve root." Dr. Voris stated that he recommended an interior interbody discectomy and fusion surgery, and explained that the complications from this operation could include infection, quadriplegia or quadriparesis.

The operation was performed on August 24, 1973. Dr. Voris was assisted by Drs. Parameswar and Leonard Smith, an orthopedic surgeon. Also present was a Dr. Searle, the anesthesiologist, and nurses Beverly Hopson and Mary E. Melancom, employees of Mercy Hospital. During the operation, the defective disc was removed from Kolakowski's spine, and the space was "plugged" with a piece of bone from his right iliac crest. Kolakowski was then lifted off of the operating table, placed on a cart, and taken first to the recovery room and then to his own room. At 6 p.m. he was visited by a nurse who noted his complaint of inability to bend his left leg, and weakness and numbness on his right side. It was noted at 7:30 and 8:45 p.m. that he couldn't move his legs and complained of stiffness. At 10:15 a notation recorded that he could move his right leg slightly, could not move his left leg at all, and had a higher than normal temperature of 102 degrees. Although Dr. Voris admitted that these symptoms were unusual and demanded attention, the hospital personnel did not contact him. A notation indicates that he was called, but could not be found. It appears that no attempt was made to contact Dr. Parameswar or any other neurosurgeon.

Voris examined Kolakowski on August 25 and found that he had poor

hand, wrist and leg movement, impaired sensation and hyperactive reflexes. He diagnosed Kolakowski's condition as spastic quadriparesis. This could have been caused by either spinal cord compression or spinal cord edema, which is the swelling of tissue due to an accumulation of fluid. Although compression should be surgically reduced as soon as possible for the best chance of recovery, Voris' opinion was that the condition was edema and could be corrected without surgery. Voris admitted that the two factors which caused edema, trauma and impaired circulation, did not appear to be present. He nevertheless prescribed a drug to reduce the swelling. Subsequent examinations showed there was no change in Kolakowski's condition. Voris and Parameswar performed another myelogram on August 27, and when a blockage was indicated, performed a laminectomy. Certain ligaments and muscles were dissected and stripped, and extruded bits of disc were removed. The post-operative report recorded that no evidence of spinal cord compression or edema was found. The report also stated that "[i]t is not felt that an adequate explanation for this patient's difficulty with leg movement has been found." Kolakowski's condition was diagnosed as "cervical myelopathy," which is an impaired function of the cervical spinal cord. He has lost the use of his limbs and is in effect a quadriplegic.

Plaintiffs filed their complaint on August 9, 1974. Counts II and IV of the complaint were brought against Mercy Hospital under a *res ipsa loquitur* theory, and sought, respectively, $5 million for Edward's pain and injuries, and $5 million for Clara's loss of her husband's consortium and services. After evidentiary depositions and affidavits were submitted, Mercy Hospital filed its motion for summary judgment. A hearing was held, the trial court granted the motion, and plaintiffs then filed this appeal.

OPINION

■■■ Plaintiffs contend that the granting of Mercy Hospital's motion for summary judgment was erroneous. Under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57), a motion for summary judgment should only be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A triable issue precluding summary judgment exists where there is a dispute as to material facts or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) In determining whether a genuine issue as to any material fact exists, the court must construe the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor

of the opponent. (*Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543, *aff'd* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.) Summary judgment provides a means of disposing of cases with dispatch, but it is a drastic method and should only be allowed when the right of the party to invoke that drastic method is free from doubt. (*Interlake, Inc. v. Harris Trust & Savings Bank* (1978), 57 Ill. App. 3d 524, 373 N.E.2d 413.) It is clear that the issue of negligence is ordinarily and pre-eminently a question of fact for the jury to decide. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; *Hays v. Place* (1953), 350 Ill. App. 504, 113 N.E.2d 178; *Bartels v. McGarvey* (1945), 327 Ill. App. 206, 63 N.E.2d 617.) Summary judgment is therefore "a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist." (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 87, 243 N.E.2d 40, 44-45.) Accordingly, the right to summary judgment must be clear beyond question. *Patterson v. Stern* (1967), 88 Ill. App. 2d 399, 232 N.E.2d 7.

■■■ Plaintiffs' complaint against Mercy Hospital was brought under the doctrine of *res ipsa loquitur*. This doctrine allows the proof of negligence through circumstantial evidence which shows that a thing which caused the injury was under the control or management of the party charged with negligence, and the occurrence is such as in the ordinary course of things would not have happened if the person charged had used proper care. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) Our supreme court has held that although only ultimate facts, and not conclusions or inferences, are ordinarily to be pleaded, in the pleading of a cause of action in a medical malpractice case under the doctrine of *res ipsa loquitur*, reliance on the doctrine should be alleged. (*Walker v. Rumer* (1978), 72 Ill. 2d 495, 381 N.E.2d 689.) A review of the record and plaintiffs' complaint indicates that their reliance on *res ipsa loquitur* was sufficiently alleged, and that it is applicable to the disposition of this case. Mercy Hospital contends, however, that all of the pleadings, depositions and affidavits filed show that there is no issue as to whether anything under its control, or any failure on its part to use proper care, could have caused Kolakowski's condition. It accordingly argues that its motion for summary judgment was properly granted, and that the trial court's order should be affirmed.

We disagree with this argument. A review of the facts adduced at this stage of the proceedings indicates that the cause and party responsible for Edward Kolakowski's condition remains unknown. It is clear that on August 24, throughout the evening following his operation, Kolakowski had serious symptoms which Dr. Voris conceded were unusual and demanded attention. Although the symptoms were noted, neither Dr. Voris, Dr. Parameswar, nor any other neurosurgeon was contacted by the

hospital personnel in charge. A verdict against Mercy Hospital could ultimately be based upon a failure by its nurses or other employees to recognize the seriousness of Kolakowski's condition and promptly inform a physician. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) Mercy Hospital points out that when Dr. Voris did examine his patient on August 25 he concluded that immediate action was not warranted and that they would wait and see if Kolakowski's condition improved with time and medication. Arguing in support of its motion for summary judgment, Mercy Hospital reasons that because no immediate action was taken by Voris when he examined Kolakowski on the 25th, the failure of the hospital personnel to contact a neurosurgeon on the 24th "could not be the proximate cause of Kolakowski's injuries." We disagree. Whether Voris' decision not to take action was correct, and whether he or other neurosurgeons would have decided differently if they had examined Kolakowski on the 24th are questions of fact which are subject to proof and the trier of fact's ultimate determination. We note that plaintiffs' attorney stated in an affidavit that a doctor who would be called as an expert witness would testify that in light of Kolakowski's symptoms, a neurosurgeon should have been reached and an immediate decompression operation should have been performed. Mercy Hospital's argument to the contrary indicates that a material dispute does exist, and the imposition of summary judgment to dispose of the case was improper. See *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105.

Further review of the record reveals that Kolakowski, his son David and a friend who was visiting in his room, all testified in their depositions that Dr. Voris told them that Kolakowski's right leg or foot was dropped off of the operating table. In their depositions, Dr. Voris denied making such a statement, and Dr. Parameswar denied that such an event occurred. Whether the statement was made and the event occurred are also questions which the trier of fact may properly resolve. Mercy Hospital argues that even if the event did occur, "the record is bare as to any involvement of hospital agents in such an alleged occurrence." It admits, however, that according to Dr. Parameswar, the hospital's nurses would "sometimes" assist in mcving a patient from the operating table to a cart "by holding the legs." We agree with Mercy Hospital that the record at present does not establish whether nurses or other hospital personnel were involved in the alleged dropping of Kolakowski's leg. It is precisely because that factual issue remains unresolved that proof should be adduced at trial and summary judgment for Mercy Hospital should not have been granted.

■■ Based on all of the above, we conclude that this case poses questions

of fact for a jury's determination at trial, and that summary judgment for Mercy Hospital was improperly awarded. Accordingly, the judgment of the circuit court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.