(No. 52713.-)

EDWARD KOLAKOWSKI *et al.,* Appellees, v̇. DAVID C. VORIS *et al.* (Mercy Hospital and Medical Center, Appellant).

*Opinion filed December 19, 1980.—Rehearing denied January 29, 1981.*

WARD, J., took no part.
RYAN and UNDERWOOD, JJ., specially concurring.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, Daniel J. Cheely and Daniel J. O'Connor, of counsel), for appellants.

Walter T. Ketchum, of Chicago (William J. Harte, of counsel), for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

Edward and Clara Kolakowski brought suit in the circuit court of Cook County, claiming damages for injuries

suffered by Edward (plaintiff) resulting from the alleged negligence of defendants, Drs. David C. Voris, K. S. Parameswar and Leonard R. Smith. Mercy Hospital (hereafter referred to as defendant) was sued in separate counts based on the doctrine of *res ipsa loquitur*. After the submission of affidavits, interrogatories and depositions, defendant's motion for summary judgment was granted. The appellate court reversed the judgment, finding that there were genuine issues of material fact present. (76 Ill. App. 3d 453.) We granted defendant's petition for leave to appeal.

The plaintiff has had an extensive history of back problems commencing in 1951 when he fell 26 feet into a pit injuring his lower back and legs. He was hospitalized twice in 1956 and placed in traction. Plaintiff underwent a laminectomy and fusion operation in 1956 and was diagnosed as suffering from a severe degenerative disease of the lumbar disc. He reinjured his back in an automobile accident in 1972. In July of 1973, plaintiff visited his family physician, Dr. John Caserta, complaining of pain in his left shoulder. Dr. Caserta prescribed heat treatments which failed to improve defendant's condition. Consequently, on July 17, 1973, plaintiff was admitted to defendant's hospital. Dr. David Voris, a neurologist, was engaged as a consultant by Dr. Caserta. Dr. Voris examined plaintiff, diagnosed his condition as arthritis or rheumatism, advised that he avoid further surgery and ordered traction and heat treatments. After these treatments, plaintiff was released and continued receiving treatments as an outpatient. However, his discomfort became unbearable, and he was readmitted by defendant on August 11, 1973. Plaintiff was placed in traction, which only aggravated his pain. Dr. Voris then decided to perform a myelogram, an X ray of the spinal cord after the injection of a contrast medium. This test was scheduled for August 16, 1973, with Dr. K. S. Parameswar assisting. A few days later, Dr. Voris informed plaintiff that the myelogram showed possible

spinal cord impairment and recommended an anterior interbody discectomy and fusion. Dr. Voris informed plaintiff that possible complications from this surgery include infection, quadriplegia and quadriparesis.

The surgery was performed on August 24, 1973, with Drs. Voris and Parameswar making the anterior incision and removing the disc from the patient's spine. Dr. Smith, an orthopedic surgeon, implanted a "plug" of bone into the space left by the removed disc. Various employees of the hospital, *i.e.,* nurses and the anesthesiologist, were also present. After surgery, plaintiff was lifted off the operating table and onto a cart. He was returned to his room at approximately 2 p.m.

At 6 p.m. he was visited by a nurse who noted on his chart that plaintiff complained of an inability to bend his left leg as well as weakness and numbness on his right side. It was noted at both 7:45 p.m. and 8:45 p.m. that plaintiff experienced stiffness and an inability to move his legs. At 10:15 p.m. a notation on his chart showed that plaintiff could not move his left leg, could only bend the right leg slightly and had a fever of 102°. Because these complaints were not anticipated post-operative symptoms, defendant's personnel called Dr. Voris but failed to reach him. It appears that no attempt was made to reach Dr. Parameswar or any other neurosurgeon. On the following day, August 25, 1973, Dr. Voris examined plaintiff and found his finger and leg movement poor. He had little grip strength and poor flexion and extension of the wrist. Dr. Voris diagnosed plaintiff's condition as spastic quadriparesis, *i.e.,* hyperactive muscle tone restricting movement. This condition could have been attributable to one of two causes: (1) spinal cord edema (tissue swelling due to an abnormal accumulation of fluid in the area), which can be corrected without surgery, or (2) spinal cord compression which requires immediate surgical intervention for decompression. Dr. Voris felt that the cause was spinal cord

edema because plaintiff still had some functioning in his limbs. He concluded that the proper course was to treat the edema with drugs to reduce swelling and then to observe plaintiff's progress. When plaintiff's condition failed to improve after several days, Dr. Voris and Dr. Parameswar ordered a myelogram. At that time, according to plaintiff's son, plaintiff asked Dr. Voris the reason for the myelogram. Dr. Voris allegedly responded, "Your right foot slipped off the operating table." Dr. Voris denies making such a statement.

The myelogram indicated a blockage at the seventh cervical level. A laminectomy was immediately performed by Dr. Voris and Dr. Parameswar, and fragments of extruded disc were removed from the fifth and sixth cervical level. The post-operative report recorded that no evidence of spinal cord compression or edema was found. The report also stated:

> "It is not felt that an adequate explanation for this patient's difficulty with leg movement has been found ***."

Plaintiff's condition was diagnosed as an impaired function of the cervical spinal cord. Plaintiff has lost the use of his limbs and is virtually a quadriplegic.

Introduced into the record was the discovery deposition of Dr. J. DeWitt Fox, plaintiff's only expert witness. Dr. Fox stated that, in his opinion, the injury occurred when the bone plug was implanted by Dr. Smith during the fusion portion of the operation. Dr. Fox stated that, in the course of impacting this plug, extruded disc material had been forced against the spinal cord and nerves, causing the plaintiff's paralysis. Dr. Fox also stated that the hospital chart did not indicate negligence of any hospital personnel.

On appeal, the defendant presents two theories to support the contention that the doctrine of *res ipsa loquitur* is inapplicable in the present case: (1) the defendant did not

have exclusive control, a requirement for the application of the doctrine, and (2) plaintiff's introduction of proof of specific negligence defeated his right to rely on the doctrine of *res ipsa loquitur.* Defendant also challenges the appellate court's ruling on the issue of summary judgment. Defendant argues that the trial court appropriately granted its motion for summary judgment because (1) the affidavit of plaintiff's attorney is defective since it violates Supreme Court Rule 191 (73 Ill. 2d R. 191), and (2) there are no genuine issues of material fact to be resolved.

The purpose of the doctrine of *res ipsa loquitur* "is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.) For plaintiff to take advantage of this inference, he must show that he was injured (1) in an occurrence which would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant, and (3) under circumstances which were not due to any voluntary act or negligence on the part of the plaintiff. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 5; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-49; Prosser, Torts sec. 39, at 214 (4th ed. 1971).) This court has held that the doctrine of *res ipsa loquitur* is available to a plaintiff in a medical malpractice case. *Walker v. Rumer* (1978), 72 Ill. 2d 495, 500; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.

It is the duty of the trial court, in the first instance, to determine as a matter of law whether plaintiff's case is one in which the doctrine may be applied. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.) The defendant argues that the plaintiff is not entitled to rely on the *res ipsa loquitur* doctrine because the plaintiff

was never in the exclusive control of the defendant. Defendant points out that, at the time of the operation, plaintiff was also under the control of the operating surgeons who were not agents of the defendant.

In *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 154 P.2d 687, the Supreme Court of California addressed the difficulty a plaintiff may experience in attempting to take advantage of *res ipsa loquitur* when suing a hospital. There, the patient's shoulder was injured while he was under a general anesthetic for an appendectomy. The plaintiff named as defendants the general practitioner, the operating surgeon, the physician who owned the hospital, the anesthesiologist who was an employee of the hospital, and two nurses, also employees of the hospital. The defendants argued that since the plaintiff was under the care of a number of persons, some of whom were independent contractors and others employees of the hospital, the element of control necessary for the application of the doctrine of *res ipsa loquitur* was absent, thereby defeating plaintiff's claim.

The court, in finding the *res ipsa loquitur* doctrine appropriate, stated:

> "The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. *** [I]t is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attend-

ance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability.

* * *

*** The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation." *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 490-92, 154 P.2d 687, 689-90.

See Annot., 9 A.L.R.3d 1315, 1321 (1966); *City of Somerset v. Hart* (Ky. 1977), 549 S.W.2d 814, 817; *Fogal v. Genesee Hospital* (1973), 41 App. Div. 2d 468, 477, 344 N.Y.S.2d 552, 563.

In the present case, the plaintiff, at the time of the alleged injury, was placed in the care and custody of the named defendants. Since plaintiff was under a general anesthetic during surgery, he was unable to determine the cause of his injuries; the cause was within the exclusive knowledge of the defendants. It is under these circumstances that a plaintiff's only recourse is to rely on the doctrine of *res ipsa loquitur*. Under the theory advanced by defendant, whenever a doctor acting in the capacity of an independent contractor participates in surgery in defendant's hospital, the element of exclusive control by the hospital ceases. We believe this approach is manifestly unfair because the physicians and hospital, at the time of surgery, each owed an independent duty to the patient and exercised concurrent control over the operation and equipment.

We therefore hold that when a patient submits himself to the care of a hospital and its staff and is rendered unconscious for the purpose of surgery performed by independent contracting surgeons, the control necessary under *res ipsa loquitur* will have been met. The burden will then

shift to the hospital to dispel the inference that it exercised the control necessary to the application of *res ipsa loquitur.*

The defendant next argues that plaintiff's introduction of evidence of specific negligence extinguishes plaintiff's right to rely on the doctrine of *res ipsa loquitur.* The premise for this argument is that if a plaintiff knows in what respects the defendant was guilty of negligence and presents any specific evidence of the negligent act, the doctrine of *res ipsa loquitur* is inapplicable because direct evidence is no longer within the exclusive control of the defendant. Defendant's theory would be accurate if the evidence introduced by plaintiff conclusively established the exact cause of his injuries. Here, the deposition of plaintiff's expert witness, Dr. Fox, reveals that, in his opinion, plaintiff's injuries were the result of the forcing of a bone "plug" against the spinal cord after the disc was removed. This statement "was merely the opinion of the [expert] witness, given, as such, upon a state of facts assumed to be true. It still remained for the jury to determine the facts, and the opinion was nevertheless an opinion only, whether it states what did cause the condition or what might cause it." (*Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 243.) The inference of negligence raised by the doctrine of *res ipsa loquitur* does not disappear when such specific evidence is admitted. Rather, both the opinion of the expert witness as well as the inference of general negligence arising from the doctrine of *res ipsa loquitur* remain to be considered by the jury with all other evidence in the case. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.) Our appellate court has consistently permitted a plaintiff to introduce evidence of specific negligence without depriving him of his right to rely on the doctrine of *res ipsa loquitur* where such specific evidence does not conclusively establish the cause of the injury. (*Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d

910, 916; *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 147-48. See Prosser, Torts sec. 40, at 232 (4th ed. 1971); 3 J. Dooley, Modern Tort Law sec. 48.17 (1977); Annot., 33 A.L.R.2d 791, 795 (1954).) Under the circumstances, we find defendant's contention on this issue to be without merit.

The defendant also argues that the appellate court erred in reversing the trial court's granting of summary judgment in favor of the defendant. Summary judgment is appropriate only when the pleadings, depositions, admissions on file, and affidavits present no genuine issue of material fact. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) In determining whether the moving party is entitled to summary judgment, the court will construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.

The defendant claims that the affidavit of plaintiff's attorney is defective in that it violates Supreme Court Rule 191. The general rule in Illinois is that "the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by a motion to strike, or otherwise, in the trial court." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Since the defendant failed to attack the sufficiency of the affidavit at the trial court, all issues in respect thereto are waived.

For the reasons stated, we conclude that the plaintiff has met the requirements for invoking the doctrine of *res ipsa loquitur* and is entitled to proceed to trial against defendant.

Therefore, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, specially concurring:

While I agree that summary judgment was not proper in this case, I fear some of the language of the opinion may be too broadly interpreted to conform to what I perceive as the permissible use of evidence of specific acts of negligence in conjunction with the doctrine of *res ipsa loquitur.* I therefore write this concurring opinion.

The opinion of the court states that our appellate court has consistently permitted a plaintiff to introduce evidence of specific acts of negligence without depriving him of his right to rely on the doctrine of *res ipsa loquitur* where such evidence does not *conclusively* establish the cause of injury. The opinion cites *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 916. The *Collgood* opinion, however, does not use the word "conclusively" but instead requires the plaintiff to "unequivocally" prove the instrumentality which caused the injury before he would be precluded from relying on *res ipsa loquitur.* I am bothered by the use of the words "conclusively" and "unequivocally." They do not convey an understanding of any accepted standard of proof and are of little help in guiding a trial judge in determining when the jury should be given a *res ipsa loquitur* instruction. In *Turner v. Wallace* (1966), 71 Ill. App. 2d 160, the court held that it is not the function of *res ipsa loquitur,* where the evidence discloses a physical cause of the injury, to permit an inference of some other unknown source or fault as constituting negligence. The court stated that a *res ipsa loquitur* instruction is to be used only where the evidence failed to reveal the actual specific sources which produced the injury. *Freer v. Rowden* (1969), 108 Ill. App. 2d 335, reached the same conclusion.

We do not know at this time what evidence will be introduced in the trial court. If when the case is tried the plaintiff calls his expert witness, Dr. Fox, who testifies that in his opinion plaintiff's injuries were the result of the

forcing of the bone "plug" against the spinal cord after the disc was removed, I would hold that the plaintiff would be bound by this testimony of his witness and any inference of negligence on the part of the defendant hospital would have to be consistent with this evidence as to the specific cause of the injury. The jury should not be permitted to speculate that the plaintiff's injuries did not result from this cause but possibly were caused by the plaintiff falling off the hospital cart or by some other negligent act by the hospital. However, inferences that the hospital failed to properly monitor the plaintiff's condition following surgery, or failed to take proper corrective measures or to notify the surgeon once it became apparent that plaintiff was not properly responding, could be drawn as being consistent with the testimony of Dr. Fox, provided the proper bases for applying *res ipsa loquitur* under these conditions are established. If, however, the plaintiff does not call Dr. Fox as a witness, but relies on the general inference of negligence and the defendant produces the testimony of Dr. Fox, then the general inference of negligence must be weighed by the jury against the testimony of Dr. Fox and the other evidence offered by the defendant. *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.

Professor Prosser summarizes my position, which I view as more restrictive than the position stated in the opinion of the court:

> "*Plaintiff is of course bound by his own evidence*; but proof of some specific facts does not necessarily exclude inferences of others. When the plaintiff shows that the railway car in which he was a passenger was derailed, there is an inference that the defendant has somehow been negligent. When he goes further and shows that the derailment was caused by an open switch, he destroys any inference of other causes; but the inference that the defendant has not used proper care in looking after its switches is not destroyed, but considerably strengthened.

If he goes further still and shows that the switch was left open by a drunken switchman on duty there is nothing left to infer; and if he shows that the switch was thrown by an escaped convict with a grudge against the railroad, he has proved himself out of court. It is only in this sense that when the facts are known there is no inference, and res ipsa loquitur simply vanishes from the case. On the basis of such reasoning as this, it is quite generally agreed that *the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence,* and so does not deprive the plaintiff of the benefit of res ipsa loquitur." (Footnotes omitted.) (Emphasis added.) Prosser, Torts sec. 40, at 232 (4th ed. 1971).

The italicized material, in my opinion, requires a court to hold that the plaintiff is bound by the evidence of specific acts which he produces. However, if the evidence does not purport to furnish a complete explanation of the occurrence, inferences of negligence *consistent with the evidence of specific facts* established by the evidence are permissible. I feel that this limitation must be placed upon the use of the *res ipsa loquitur* principle in order to have any meaningful factual determination and in order to prevent pure speculation and conjecture.

MR. JUSTICE UNDERWOOD joins in this special concurrence.