RICHARD E. LYNCH, d/b/a Richard's Tool and Machine Service, Plaintiff and Counterdefendant-Appellant, *v.* PRECISION MACHINE SHOP, LTD., Defendant and Counterplaintiff-Appellee.

Fifth District    No. 80-128

Opinion filed October 8, 1981.

JONES, J., dissenting.

J. Mark Maclin, of DuQuoin, for appellant.

Richard Kruger, of Kruger & Foster, of Metropolis, for appellee.

Mr. JUSTICE WELCH delivered the opinion of the court:

The plaintiff brought suit in the Circuit Court of Perry County to recover amounts alleged to be due him for repairs on various pieces of machinery owned by the defendant. A counterclaim was filed by the defendant, in which it requested damages for the plaintiff's negligent repair of a Landis #4 Boring Mill. The trial court granted the plaintiff recovery of $2,270 for his work on a tow boat gear box. It was found that the plaintiff was negligent in his work on the mill, so he was denied recovery of $2,441.32 which he sought for that work. The defendant was allowed $9,033.76 in damages, representing the cost of repairing the mill, and $3,300 for extra expenses incurred in completing a job without use of the mill. Plaintiff appeals, arguing that (1) the finding that he was negligent is not supported by the evidence, and (2) the trial court should not have awarded the defendant $3,300 in "lost profits."

Proper assessment of the plaintiff's contentions requires a review of the facts of this case. From the outset, it should be remembered that his appeal is concerned only with the plaintiff's repair work on the boring mill, and not with work on the gear box for which he was granted recovery at trial. The mill, which was manufactured around 1920, weighs between 15,000 and 20,000 pounds and was purchased by defendant Precision Machine Shop from Abbott Machinery in 1975. That year, the

plaintiff was engaged to work on the mill at Precision's place of business in Kentucky, and was reimbursed for his labor by Abbott.

From July through September of 1976, the plaintiff did additional repairs on the machine. He was responsible for the repairs performed on the mill, which included work done inside the head stock gear box. This portion of the machine, which is the subject of the allegedly improper repair, measures three feet long, two feet high and one and a half feet deep. The head stock gear box is essentially a hollow cast iron box which contains most of the gear mechanism for the mill. The top quarter of the box is a solid cast iron cover which weighs nearly 500 pounds and is attached by nine bolts and two dial pins. All witnesses at trial agreed that a hoist, several hours and at least two employees would be needed to remove this cover.

Although the gear box is not entirely sealed, the openings in it are few. The cover is perforated with oil holes approximately 1/16th to 3/16th's of an inch in diameter. A hole the size of a fist exists at the back of the box, but because of its location, the hole would not readily admit anything but oil. The plaintiff installed a transmission in that opening the last time he worked on the mill, in March of 1977.

The work done by the plaintiff in 1976 required that the cover to the gear box be removed. When the work was finished, the plaintiff inspected the box both visually and manually for foreign objects. At trial, he testified that the components in the box nested so tightly that any foreign material would prevent the lid from fitting.

Between September 1976 and March 1977, the cover to the gear box was not removed. Precision moved its operations during this time, and the mill had to be transported three miles to its new quarters, but the gear box was not disassembled. The mill was used for about six hours during this period, when one or two wheels were bored. This type of operation, Precision employees testified, did not require complete use of the feed mechanism.

In March 1977, the plaintiff was called in to install a transmission in the hole at the rear of the gear box, as noted above. These repairs necessitated the removal of the cover of the box, and, before it was replaced, the plaintiff inspected the interior of the gear box. The plaintiff performed no further work on the Landis Boring Mill. He was never paid for the 1977 repairs, although his bill for the 1976 maintenance was paid by the defendant.

On both occasions that the plaintiff performed work for Precision and was paid by them, he was reimbursed for his time and material plus expenses, including travel. He employed a contractor who accompanied him to Kentucky to assist in the repairs. The plaintiff performed "some of the work" on the mill in 1976 and 1977, but his primary capacity was

supervisory. He testified that in 1976, he and his contractor were assisted by "several" Precision employees, perhaps as many as four, and in 1977, at least one Precision workman helped make repairs on the mill.

After the installation of the transmission, the mill was used without complication for boring two wheels, which took approximately 20 hours. In November 1977, Larry Hays, a Precision employee, used the mill to rebore a machine which Precision had contracted to repair for Westvaco Paper Mill. This required the use of the full feeding mechanism. Hays stated that 10 to 15 minutes into the job, the mill made a "breaking sound" then stopped functioning.

Hays told his foreman, Clifford Browning, of the incident. For the first time since the plaintiff's last repair work, the cover to the gear box was removed. Hays and Browning noticed that six teeth were missing from one ring gear, another ring gear was broken and the planetary gear housing was cracked. They discovered a chisel, a section of a file and two brass washers in the oil reservoir. The chisel was chipped in such a way as to suggest that it might have been between the gears. None of these objects, all witnesses agreed, should have been in the oil reservoir, although the two washers should have been attached to parts elsewhere in the gear box. Neither a chisel nor a file was used in removing the cover to the gear box in November 1977, but the plaintiff testified that they were commonly used in the type of work that he had done for Precision. He remembered using a file, but not a chisel, in the gear box in March 1977. Hays, Browning, and the plaintiff thought that it would be difficult, if not impossible, to insert these items into the gear box without removing its cover.

At trial, Hays testified that the 50-weight oil in the oil reservoir was so heavy that the light chisel would almost float in it. He believed that the gears operating at a fast rate of speed would cause enough turbulence for the oil to throw the chisel into the assembly's gears. In rebuttal the plaintiff stated that several things, including wear due to age, could have caused the damage to the mill, and in his opinion it would be nearly impossible for the oil to throw the chisel into the gear assembly. The whereabouts of the chisel were unknown at the time of the trial, and it was never introduced into evidence.

Precision employees repaired the gear box after it broke. According to Browning, 288¾ hours of regular machinists' time at $16.50 per hour and 172½ hours of machinists' overtime at $24.75 per hour were needed to effectuate the repairs. Using these figures, the court awarded Precision $9,033.76 as its cost to fix the mill. Browning also testified that because the mill was inoperable, the Westvaco job had to be done with portable units. The additional work on the Westvaco job totalled 200 hours, or, at $16.50 per hour, $3,300, the figure granted by the trial court.

The plaintiff first argues that the evidence introduced at trial is not enough to prove his negligence. It must be conceded that no direct evidence points to the plaintiff as the source of the foreign material in the gear box. However, the defendant maintains, the proof at trial was sufficiently strong to establish plaintiff's negligence according to the criteria for circumstantial evidence set forth in the doctrine of *res ipsa loquitur*.

■■ In order for that doctrine to apply, the defendant in this case must show (1) that it was not at fault in causing the injury, (2) that the occurrence involved "an agency or instrumentality within the plaintiff's exclusive control," and (3) that the injury does not normally happen in the absence of negligence. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216.) Whether sufficient evidence has been presented to invoke *res ipsa loquitur* is a question of law. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) The plaintiff does not deny that the first condition has been fulfilled, but contends that the last two conditions were not proven at trial.

■■ Because *res ipsa loquitur* allows an inference of negligence in instances where one party has greater knowledge of the direct evidence concerning the cause of injury (*Woodward v. Mettile* (1980), 81 Ill. App. 3d 168, 400 N.E.2d 934), it must be shown that the items which caused the injury were within the exclusive control of that party at the time of the alleged negligence. (*Publication Corp. v. Chicago River & Indiana R.R. Co.* (1977), 49 Ill. App. 3d 508, 364 N.E.2d 523.) This inference of negligence is not permitted if the control of or responsibility for those items is divided. (*Roberts v. City of Sterling* (1959), 22 Ill. App. 2d 337, 161 N.E.2d 138; *Crump v. Montgomery Ward & Co.* (1942), 313 Ill. App. 151, 39 N.E.2d 411 (abstract).) The items in question in this case are the head stock gear box and its contents.

In support of the application of *res ipsa loquitur*, it should be noted that the plaintiff's role in the repair work was admittedly supervisory. But this alone does not give him exclusive control over the interior of the gear box. The plaintiff was retained as an independent contractor and was reimbursed for his time and expenses. He was accompanied by an assistant which he had engaged, and he brought at least some of the tools which were used in the repairs, but all work was done at Precision's Kentucky shop and on all occasions, the plaintiff was assisted by Precision employees. Under these circumstances, the plaintiff's control of the contents of the gear box was not of a magnitude which would suggest that he had any greater knowledge of the cause of the breakdown than the defendant or its employees. In other words, his authority over the gear box was not shown to have been exclusive.

■■ As there was no direct proof of plaintiff's negligence in performing

the repair work on the mill, and as the evidence of plaintiff's control of the gear box is insufficient to invoke proof of negligence by *res ipsa loquitur*, the trial court erred in finding that the plaintiff's work was performed in a negligent manner. The plaintiff must therefore be given judgment for $2,270.00 for the unpaid work on the tow boat gear box and $2,441.32 for the work on the mill, for a total of $4,711.32. The defendant is to take nothing on his counterclaim.

Affirmed in part, reversed in part.

HARRISON, J., concurs.

Mr. JUSTICE JONES, dissenting:
I respectfully dissent.
My disagreement with the majority centers upon its reversal of the trial court because the plaintiff's control over the gear box was not shown to have been exclusive.

As authority for their position that the person or entity must have "exclusive" authority over the instrumentality, the majority cites *Spidle v. Steward*, decided by our supreme court in February 1980. It is true that the *Spidle* case does use the term "exclusive control" in listing the three elements necessary to a *res ipsa loquitur* case. (79 Ill. 2d 1, 5, 402 N.E.2d 216, 218.) Nevertheless, the requirement of *Spidle* that the person or entity charged under *res ipsa loquitur* have "exclusive control" of the instrumentality appears unwarranted and fortuitous in view of other authority.

In *Spidle* the court cites as authority for its "exclusive control" terminology the case of *Metz v. Central Illinois Electric & Gas Co.* In discussing the *res ipsa loquitur* doctrine the court in *Metz* related:

"When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. (*Feldman v. Chicago Railways Co.*, 289 Ill. 25; *Bollenbach v. Bloomenthal*, 341 Ill. 539.) This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is *primarily* within the knowledge and control of the defendant." (Emphasis added.) (32 Ill. 2d 446, 448-49, 207 N.E.2d 305, 307.)

In subsequent portions of the *Metz* case the court then uses the standard

of "exclusive control" of the instrumentality as a requisite to the application of the doctrine. Thus, the *Metz* case uses both the terms "primarily in control and management" and "exclusive control." Both cannot be the standard.

Many Illinois cases which discuss the doctrine relate simply that the person to be charged under *res ipsa loquitur* must be in "control or management" of the instrumentality causing the injury. *E.g., Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 337 N.E.2d 15; *Krotke v. Chicago, Rock Island & Pacific R.R. Co.* (1974), 26 Ill. App. 3d 493, 327 N.E.2d 212; *Wimberley v. Material Service Corp.* (1973), 12 Ill. App. 3d 1051, 299 N.E.2d 425.

*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397, was decided by our supreme court subsequent to the *Spidle* case. In it the court considered the degree of control of an instrumentality that must be exercised by the person being charged under the doctrine of *res ipsa loquitur*. It listed the three elements necessary for a *res ipsa loquitur* case and gave as the second, "by an instrumentality or agency under the *management or control* of defendant." (Emphasis added.) (83 Ill. 2d 388, 394.) Stated authority for this language was *Spidle v. Steward. Spidle,* as has been noted, used "exclusive control" rather than "management or control." Whether the supreme court was intentionally withdrawing their earlier use of "exclusive control" cannot be known. In any event, in the *Kolakowski* case, they expressly held that the defendant hospital could be liable under *res ipsa loquitur* despite the fact that surgeons and others were present at and participating in an operation that allegedly resulted in plaintiff's injury.

> "Under the theory advanced by defendant, whenever a doctor acting in the capacity of an independent contractor participates in surgery in defendant's hospital, the element of exclusive control by the hospital ceases. We believe this approach is manifestly unfair because the physicians and hospital, at the time of surgery, each owed an independent duty to the patient and exercised concurrent control over the operation and equipment." (83 Ill. 2d 388, 396, 415 N.E.2d 397, 401.)

In dispensing with the requirement of "exclusive control" the court adopted the following expression from *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 492, 154 P.2d 687, 690:

> " " "* * * The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation." ' " 83 Ill. 2d 388, 396, 415 N.E.2d 397, 401.

The position of the supreme court, as expressed in *Kolakowski*, is in keeping with the expression of the Restatement (Second) of Torts §328D (1965). In comment g to that section, *"Defendant's Exclusive Control,"* it is stated:

> "It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. He may be responsible, and the inference may be drawn against him, where he shares the control with another, * * *. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another, * * *. He may be responsible where he is under a duty to control the conduct of a third person, * * *. It may be enough that the defendant was formerly in control, at the time of the probable negligence, * * *. Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against."

In the case under consideration the plaintiff was an independent contractor who was retained to bring about the repair of the boring mill. The responsibility was exclusively his. All operations were performed under his direction and control. His alone was the responsibility for directing the workmen. That responsibility was not relieved by the fact that some employees of Precision were loaned to him for the performance of the work. The plaintiff did in fact do the work, personally inspected the gear box before reassembly and then supervised the reassembly. All the evidence fuels the ready inference that negligence must have occurred in order for the chisel, file and washers to have been in the gear box after completion of the work by the plaintiff. Under the rules expressed in *Kolakowski, Ybarra* and the Restatement, plaintiff was obliged to come forward with evidence that would dispel the inference that he exercised the control necessary to the application of *res ipsa loquitur*. The plaintiff presented no such evidence. Therefore, I would affirm the judgment of the trial court.