JOHN R. BOYER, Plaintiff-Appellant, v. PERRY RUDMAN, Defendant-Appellee.

Third District   No. 3—87—0033

Opinion filed September 22, 1987.—Rehearing denied October 27, 1987.

Ronald E. Boyer, of Watseka, for appellant.

James R. Fabrizio, of Garrison, Fabrizio & Hanson, Ltd., of Joliet, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, John R. Boyer, brought this legal malpractice action against the defendant, attorney Perry Rudman, alleging negligent representation of the plaintiff in a domestic relations cause. The plaintiff appeals from an order granting summary judgment in favor of the defendant. We affirm.

The defendant represented the plaintiff in proceedings which resulted in the entry of a divorce decree on May 13, 1976. Under that decree, the plaintiff agreed to pay to his ex-wife and minor child $625 per month for alimony and child support. The payments were to continue for 14 years regardless of the wife's remarriage or the minor's attaining majority. After 14 years, the payments would continue until the wife remarried. Also, a change in the wife's income would not serve as grounds for reducing the amount or duration of the payments. The decree further provided that after payment of the mortgage, sales expenses and the sum of $16,500 to the wife, the plaintiff would receive the proceeds from the sale of the marital home, the Boyers' most substantial marital asset.

In 1984, the plaintiff filed the instant complaint. The plaintiff alleged that when his wife remarried in February of 1981, his obligation to pay future maintenance was terminated pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)). The plaintiff further alleged that the defendant, as his attorney, had negligently failed to timely file a petition to terminate the maintenance until after the legislature had amended section 510(b). Following its amendment in January of 1982, section 510(b) specifically provided that upon agreement, maintenance payments could continue after the recipient spouse's remarriage.

According to the plaintiff's deposition, when his wife remarried, the plaintiff asked the defendant whether something could be done about the maintenance payments. The defendant replied that the plaintiff was "stuck with it." Also in his deposition, the plaintiff claimed that in April of 1982, the defendant on his own volition filed a petition to terminate the maintenance payments. The plaintiff gave

his subsequent approval to the filing. The record indicates that the petition was denied.

In his deposition, the defendant testified that he negotiated a settlement which the plaintiff approved. By that settlement the plaintiff would receive at least $30,000 from the sale of the marital home in exchange for the wife's receiving $16,500 from the house and $7,500 each year for a minimum of 14 years. Thereafter, sometime in 1981 the plaintiff asked the defendant if anything could be done about the maintenance payments, as the wife had remarried. The defendant replied that the payments could not be changed because the maintenance was so closely interrelated to the property division that the courts would have viewed it as nonmodifiable. The defendant stated that he filed a petition to modify the maintenance. The plaintiff requested that filing in order to placate his second wife. The defendant admitted that he did not file the petition until early 1982 because prior to that time the wife had pending a rule to show cause against the plaintiff for arrearage in maintenance payments.

The plaintiff presented into evidence the deposition of an expert witness, Alexander Edgar. Edgar, an attorney specializing in domestic relations, essentially testified that given the law in 1981, the wife's maintenance had terminated upon her remarriage and the defendant's failure to file the petition to terminate maintenance constituted malpractice.

The defendant filed a motion for summary judgment in December of 1984, relying on the aforementioned evidence. The motion was denied. In November of 1986, the defendant filed a second motion for summary judgment, incorporating the same evidence as in the first motion and citing *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719. The court granted the second motion without comment. This appeal followed.

On appeal, the plaintiff raises a number of issues. However, we need only address his first issue: whether the trial court erred in granting summary judgment. The plaintiff argues that whether an attorney has exercised a reasonable degree of skill and care is a question of fact and may not, as it was here, be determined as a matter of law.

■■ Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In determining whether a genuine issue as to any material fact exists, the court must construe

the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor of the opponent. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6, *aff'd* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) Liability for malpractice attaches when an attorney fails to exercise a reasonable degree of care and professional skill. *Gelsomino v. Gorov* (1986), 149 Ill. App. 3d 809, 502 N.E.2d 264.

In *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719, a 1980 dissolution decree incorporated a property settlement agreement whereby the husband agreed to pay the wife unallocated maintenance and child support in the amount of $3,100 per month for 60 months. The agreement provided that the payments would be nonmodifiable.

In December of 1981, the wife in *Kozloff* remarried. In January of 1982, the husband filed a petition to modify the dissolution decree. The husband noted that when the decree was entered, section 510(b) of the Act provided: "The obligation to pay future maintenance is terminated upon *** the remarriage of the party receiving maintenance." (Ill. Rev. Stat. 1979, ch. 40, par. 510(b).) Effective January 1, 1982, section 510(b) was amended with the preamble: "Unless otherwise agreed by the parties ***." (Ill. Rev. Stat. 1981, ch. 40, par. 510(b).) The husband argued that prior to 1982 the legislature intended that maintenance would terminate upon the recipient's remarriage, regardless of a contrary agreement.

The *Kozloff* court disagreed, holding that the preamble to section 510(b) was intended to clarify existing law, and not to change it. The court found that the modification prohibition clause in the settlement agreement was effective.

■ Consequently, pursuant to *Kozloff*, even before 1982 section 510(b) permitted parties to agree to maintenance that would be payable following the remarriage of the recipient. As the instant settlement agreement included such a provision, we find that the maintenance payments were not modifiable. As a result, we find that the trial court properly concluded as a matter of law that the defendant did not breach the standard of care that he owed to the plaintiff.

Accordingly, the judgment of the circuit court of Grundy County is affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.