RICHARD D. BORGESON, Plaintiff-Appellee, v. SOL HEIFETZ, Defendant-Appellant (The American National Bank and Trust Company of Chicago, as Trustee, Defendant-Appellee).

First District (3rd Division)   No. 1—89—1762

Opinion filed February 7, 1990.—Rehearing denied August 10, 1990.

Edward A. Berman, P.C., of Chicago, for appellant.

Kenneth F. Levin, of Kenneth F. Levin, Chartered, of Chicago, for appellee Richard D. Borgeson.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Sol Heifetz, appeals from the entry of partial summary judgment for specific performance of a real estate contract under Supreme Court Rule 307 (134 Ill. 2d R. 307) on interlocutory appeals.

Appellant Heifetz argues that the trial court erred in: directing the issuance of a deed and allowing plaintiff Richard D. Borgeson to clean up contamination using defendant seller's funds; granting summary judgment because plaintiff's motion for summary judgment was unsupported by affidavits or depositions and because there were genuine issues of material fact to be resolved; striking his affirmative defense relating to the plaintiff Borgeson's failure to elect to take the property subject to a title exception; and determining that the existence of contamination on the property interfered with plaintiff's planned use of the property.

Plaintiff, Richard D. Borgeson, filed a complaint for specific performance on February 3, 1989, against Heifetz and the American National Bank and Trust Company of Chicago as trustee under trust agreement dated March 14, 1984, and known as trust number 60538. In a September 18, 1988, real estate contract and an October 14, 1988, letter agreement, Heifetz agreed to sell to plaintiff property improved with a car wash, gas station, and mini-mart for $680,000. Plaintiff alleged that on January 10, 1989, Heifetz failed to comply with his contract obligations to provide a current survey, repair and/or authorize plaintiff to inspect repairs purportedly made, repair underground leaks in order for plaintiff to lawfully operate the car wash and gas station, provide proposed drafts of closing documents, and convey good and merchantable title. Plaintiff sought an order enjoining and restraining Heifetz from encumbering or conveying the property and requiring Heifetz to specifically perform the contract by conveying title and effecting all necessary repairs to the property.

Paragraph 9(a) of the contract stated in part:

"Seller shall *** deliver *** to Purchaser *** a title commit-

ment for an owner's title insurance policy *** in the amount of the purchase price showing title *** subject only to (1) the conditions *** and standard *or general* exceptions contained in the owner's policy issued by that company; (2) the *title* exceptions set forth above, in paragraph 4(b); and (3) title exceptions which may be removed by the payment of money at the time of closing *and* which the Seller may so remove at that time by using the the [*sic*] funds to be paid upon the delivery of the deed." (The words in italics were illegible in the record but are supplied in plaintiff's brief.)

Paragraph 4(b) of the contract stated that title was to be conveyed subject only to general taxes for 1988 and subsequent years; special taxes or assessments for any improvements not yet completed; any installments not due at the date of the contract of any special tax or assessments for completed improvements; building lines and building and liquor restrictions of record; zoning and building laws and ordinances; private, public and utility easements; covenants and restrictions of record as to use and occupancy; party wall rights and agreements; existing leases and tenancies; and acts done or suffered by or through the purchaser.

Paragraph 9(b) of the contract stated:

"If the title commitment discloses exceptions relating to title other than those referred to in paragraph 9(a), Seller shall have 30 days from the date of the delivery to Purchaser thereof to have these exceptions removed from the commitment. If Seller fails to have these exceptions removed within such time, Purchaser may terminate this contract or may elect, upon notice to Seller within 10 days after the expiration of the 30-day period, to take title as it then is with the right to deduct from the purchase price liens or encumbrances of a definite or ascertainable amount. If Purchaser does not so elect, this contract shall become null and void without further action of the parties, and the earnest money shall be returned to the Purchaser."

A rider attached to the contract included the following terms:

"14. Seller represents that the heating, cooling, electrical, plumbing and mechanical systems and fixtures and all equipment used in the car wash, gas station, and convenience store on the premises are currently in good working order and will be in good working order on the closing date.

\* \* \*

18. Seller represents:

\* \* \*

346

C) That there is City, County, State or Federal law or regulation which would prevent Buyer or his assignees from operating any or all of the three businesses presently being operated on the subject premises by the Seller."

A letter agreement entered October 19, 1988, changed the date of closing to January 10, 1989.

On January 6, 1989, the attorney for Borgeson sent a letter requesting the closing of the transaction be postponed from January 10, 1989, to a date later in January.

A January 9, 1989, letter attached to the complaint requested an extension of the date for closing of the contract until on or after January 24, 1989. The letter also stated that plaintiff was ready, willing and able to close subject to defendant's compliance with the contract by: (1) forwarding copies of certain documents which were listed; (2) clearing up title matters including a pending proceeding in Cook County circuit court shown as an exception to the title insurance commitment; (3) repairing equipment to plaintiff's satisfaction and permitting inspection by plaintiff prior to closing; and (4) correcting prior to closing leakage that caused soil contamination with benzene and xylene in violation of Federal and State laws.

Heifetz filed an answer in which he stated in paragraph 4:

"Defendant admits that the Contract was a valid, binding and enforceable contract. Defendant denies that the Contract is currently a valid, binding and enforceable contract and affirmatively states that the contract is null and void as specifically detailed in Defendant's Affirmative Defense, included herein."

Heifetz admitted in his answer that he received a copy of the January 9, 1989, letter but contended that plaintiff was not ready to proceed with closing on January 10, 1989, and instead had requested an extension in a January 6, 1989, letter. Heifetz refused to give an extension.

Heifetz also stated in his answer that he was unable to convey good and merchantable title on January 10, 1989, as disclosed in the title commitment. The commitment stated that an owner's policy in the amount of $10,000 was to be issued to insure plaintiff and that a loan policy in an amount "to come" was to be issued to insure Broadway Bank. Noted in exception number nine of the title commitment was:

"Proceeding pending in the circuit court of Cook County, Illinois, case no. 86M1403030, on a complaint filed April 15, 1986 by the City of Chicago vs. American National Bank and Trust Company of Chicago, as trustee under trust number 60538, and others for building violation, receiver and demolition.

Lis pendens notice recorded April 18, 1986 as document 86151286

September 6, 1988 order Saul Heiftz [*sic*] fined $800.00 plus $47.50 costs

September 13, 1988 order motion plaintiff Saul Heiftz [*sic*] fined a total of $800.00 plus $47.50 costs

September 21, 1988 order motion defendant judgment and fine entered against Saul Heiftz [*sic*] vacated."

Heifetz alleged in his affirmative defense that on February 23, 1989, and as of April 3, 1989 (the date of the pleading), he was unable to remove exception number nine and that plaintiff neither terminated the contract nor timely elected to take the property subject to the title defect. Heifetz also alleged that a February 23, 1989, letter from his attorney gave plaintiff notice of termination because of Heifetz' inability to remove exception number nine. The letter stated that more than 40 days had elapsed subsequent to the delivery of plaintiff's request to remove title exceptions, and that the contract was null and void because plaintiff had not elected to take title pursuant to paragraph 9(b).

Attached to plaintiff's reply to Heifetz' answer was a March 3, 1989, letter from plaintiff's attorney to Heifetz and his attorneys in response to Heifetz' notice of termination letter. The letter stated that plaintiff was not notified of Heifetz' inability or unwillingness to remove exception number nine until he received the February 23, 1989, letter. The letter also stated that plaintiff would take title to the property subject to exception number nine.

Plaintiff moved for summary judgment; he argued that Heifetz' affirmative defense was meritless because Heifetz could not declare himself unable to remove the building code case and then declare himself unable to perform the contract. No affidavits or counteraffidavits were filed in connection with the motion.

Plaintiff argued that the verified pleadings, the attached exhibits, and admissions contained in the pleadings were sufficient for summary judgment to be awarded to plaintiff.

The trial court ruled that there were no "material facts of issue" and entered judgment in favor of plaintiff. Heifetz' affirmative defense was found to be insufficient. American National was ordered to deposit the deed into an escrow. Plaintiff was ordered to cure the contamination and was to be credited at closing with all reasonable expenses associated with cleaning up the contamination, the extent of which was unknown. All mechanical equipment was to be in good working order at defendant's expense. American National was to convey title to plaintiff after amounts were credited or debited according to the sales

contract. Heifetz was ordered to do all things necessary to "assist or effect" the order's terms.

■ Summary judgment shall be entered if there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) The right to summary judgment must be clear beyond question. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 457, 395 N.E.2d 26, *aff'd* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) The motion for summary judgment is construed liberally in favor of the nonmovant. *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 642, 411 N.E.2d 1168.

■ The trial court erred in granting summary judgment because there was a genuine issue whether the pending proceeding for "building violation, receiver and demolition" was a title exception that could be removed by the payment of money at the time of closing so as to fall under paragraph 9(a)(3) of the contract. There is no information in the record about how the proceeding could be dismissed.

Exception number nine of the title commitment was a proceeding in the circuit court of Cook County in which the City of Chicago complained of building violations and requested a receiver and demolition. The matter was still a cloud on the title even though the $800 fine plus costs was vacated by court order on September 21, 1988, according to the title commitment. This indicated that something more was required to be done in order to have the lawsuit dismissed, in addition to the payment of the fine. The pleadings and exhibits do not indicate what ordinance violations were alleged in the complaint of the City of Chicago. One can only speculate as to how simple or difficult it would be to remove the cloud from the title to the property.

If the exception could not be removed by the payment of a definite amount of money at closing, then paragraph 9(b) would apply because none of the other title exceptions of paragraph 9(a) applied. Under paragraph 9(b), if the seller failed to remove the exception within 30 days of delivery of the commitment to the purchaser, the purchaser could elect to take the title subject to the exception only if he gave notice to the seller within 10 days of the expiration of the 30 days. If the seller did not give such notice, the contract became void without further action of the parties.

If title exception number nine triggered paragraph 9(b) of the contract, summary judgment could not be entered in plaintiff's favor because plaintiff failed to make a timely election. The date that plaintiff received the title commitment is not in the record, but the latest date that he could have received it was January 9, 1989, because plaintiff

requested in a letter of that date to have the title exception removed. The 40th day after delivery could then have been no later than February 18, 1989. Plaintiff's attempted March 3, 1989, election was too late because the contract became void automatically by plaintiff's inaction in the 10 days following the 30-day period.

Plaintiff argues that Heifetz refused to remove exception number nine and that Heifetz' breach of the contract could not relieve him of his duty to perform. There is no indication in the record that Heifetz refused rather than was unable to remove the exception. In any event, the possibility of the seller's wilful breach is contemplated in paragraph 9(b) of the contract because it refers to the seller's failure to correct the defect.

■■ Plaintiff also argues that Heifetz did not tender a title commitment for an insurance policy in the required amount so that the commitment did not trigger the notice of election requirement. Whether the commitment was inadequate is a question of fact that would preclude summary judgment. Both plaintiff and defendant have treated the title commitment of December 21, 1988, as the only title commitment to check if there were any exceptions to the title to the property prior to closing the transaction. Plaintiff Borgeson's attempted election on March 3, 1989, was based on the December 21, 1988, title commitment. Even if the amount of insurance were inadequate, the purchaser would not thereby be relieved of his contractual obligation to either terminate the contract or to give notice of an election to avoid the contract becoming void.

■ Plaintiff also argues that the filing of the specific performance complaint on February 3, 1989, was a notice of election to take the property subject to the title defect. The complaint was filed within the 30-day period in which Heifetz was permitted to cure title defects and not within the 10-day period *after* the expiration of the 30 days, in which a notice of election was to be given. Even if plaintiff could make an election to take the property subject to the defect prior to the expiration of the 30 days, the complaint was not notice of an election to take the property subject to the title exception. The complaint did not clearly state that plaintiff desired to take the property subject to the title exception and actually indicated to the contrary in its allegation that Heifetz failed to convey good and merchantable title.

The judgment of the circuit court is reversed and the cause is remanded.

RIZZI and WHITE, JJ., concur.