(No. 55869.—

RICHARD E. LYNCH, Appellee, v. PRECISION MACHINE SHOP, LTD., Appellant.

*Opinion filed December 17, 1982.*

268

Richard Kruger, of Kruger & Foster, of Metropolis, for appellant.

Edward J. Kionka, of Carbondale, and J. Mark Maclin, of DuQuoin, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Richard E. Lynch, brought suit in the circuit court of Perry County to recover a money judgment allegedly due him from defendant, Precision Machine Shop, Ltd. The action arose out of repair work plaintiff performed for defendant on a river-barge transmission and on the gear box of a boring mill. Defendant counterclaimed for damage allegedly caused by plaintiff to the gear box and for additional sums expended while the mill was out of commission. Following a bench trial, the trial court entered final judgment in the sum of $2,270 to plaintiff for repairs performed on the barge transmission, but denied plaintiff recovery for his repairs on the boring mill. The court entered judgment in favor of

defendant on its counterclaim in the amount of $9,033.76 for repair of the gear box and $3,300 for extra expenses incurred by defendant in completing a job without use of the mill. The appellate court affirmed the portion of the judgment pertaining to the barge transmission. With respect to the boring mill, a majority of the appellate court reversed the trial court's judgment on defendant's counterclaim and entered judgment for plaintiff of $2,441.32 for his work on the mill. 100 Ill. App. 3d 771.

The questions before us relate only to plaintiff's repair work on the boring mill. They are: (1) Did defendant, as counterclaimant, establish the necessary elements of *res ipsa loquitur* to support its judgment for repair of the gear box? (2) Was defendant entitled to damages incurred during the period of repair of the gear box?

The facts reveal the boring-mill gear box is approximately three feet long, two feet high and one and one-half feet deep. It is made of cast iron and contains the gear mechanisms and clutches for the mill. The top quarter of the gear box is a solid cast-iron cover weighing between 400 and 500 pounds. It is attached by nine bolts and two dial pins; its removal requires a hoist and at least two people working several hours. The cover has some "oil openings" estimated at between $1/16$ to $3/16$ inches in diameter. A hole approximately $1\frac{1}{2}$ inches in diameter is located at the rear of the box. With the cover in position, it is unlikely that anything other than oil could be inserted into the gear box.

In 1975, the first year defendant was in possession of the boring mill, plaintiff performed some repair work on the machine. The record does not indicate that the cover was removed for that work. Then in July through September of 1976, plaintiff performed additional work on the machine that necessitated removal of the cover. Plaintiff testified that he was assisted in these repairs by several of defendant's employees. At the conclusion of

the work, prior to replacing the cover, he inspected the gear box visually and manually and found no foreign objects. Plaintiff also stated that the cover would not fit if foreign materials were present.

From September 1976 to March 1977, the cover to the gear box was not removed. During this period, the mill was used to bore one or two wheels, each taking approximately six hours. The testimony indicated that this operation did not require full use of the feed mechanism.

In March 1977, plaintiff was called to install a transmission at the rear of the gear box, a job that required removal of the cover. He was assisted by at least one of defendant's employees and by a contractor he employed. The cover was removed by these employees just prior to his arrival. Plaintiff testified that before the cover was replaced at the conclusion of the job he inspected the interior of the gear box but did not reach down and check the oil pan "in explicit detail." He stated that he observed no foreign objects. Plaintiff tested the machine but did not run a workpiece on it. Precision paid Lynch for the 1976 work but not for the 1977 repairs.

Following installation of the transmission in March, the mill was used, without incident, to bore two wheels, each wheel taking between six and 12 hours. Subsequently, in November 1977 Larry Hays, defendant's machinist, was using the mill to rebore a large log loader. The task entailed use of the full feeding mechanism. At this time the mill made a "breaking sound" and stopped functioning 15 minutes into the job. Hays told the shop foreman, Clifford Browning, of the incident and, for the first time since plaintiff's previous repair work, the cover to the gear box was removed. The two men observed that six teeth were missing from one ring gear, another ring gear was broken, and the planetary gear housing was cracked. They discovered a chisel, a section of file and two brass washers in the oil reservoir at the

bottom of the gear box. The chisel was chipped in a way that would suggest it might have been between the gears. The witnesses agreed that none of these objects should have been in the oil reservoir, although the two washers should have been attached to parts elsewhere in the gear box.

Plaintiff testified that the chisel and file could have caused the damage to the gear box but that other things, such as worn parts, also could have been responsible. He stated his belief that it would be nearly impossible for the oil in the pan to throw the chisel into the gear assembly. Hays testified that the 50-weight oil in the reservoir was so heavy that a light chisel would almost float in it. In his opinion, the gears operating at a fast rate of speed could cause enough turbulence for the oil to pick up the chisel and cause it to catch in the assembly's gears. Browning also testified that the churning action of the oil could pull the chisel from the bottom of the gear box.

Neither a chisel nor a file was used in removing the gear-box cover when the problem occurred in November 1977. Plaintiff did not remember using a chisel, but did testify that a file was used in repairing the gear box both in 1976 and in March 1977. Plaintiff, Hays, and Browning all testified to the effect that it would be very difficult, if not impossible, for the chisel and file to enter the oil reservoir without removal of the gear-box cover.

Browning also testified that defendant's employees repaired the boring mill at a cost of $9,033.76. He further stated that, because the mill was out of commission, the job in progress had to be performed with portable units. This resulted in 200 additional hours of work at $16.50 per hour. Based on these figures, the trial court made the above-stated awards on defendant's counterclaim.

As noted above, the first issue is whether *res ipsa lo-*

*quitur* is applicable under the facts of this case. As has been repeatedly observed by this court, the *res ipsa loquitur* doctrine allows the trier of fact to draw an inference of negligence from circumstantial evidence. To avail itself of the doctrine, plaintiff (in our case, counterclaimant) must demonstrate that he was injured (1) in an occurrence that would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant (here, counterdefendant), and (3) under circumstances indicating the injury was not due to any voluntary act or neglect on the part of the one claiming the doctrine. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394; *Spidle v. Steward* (1980), 79 Ill. 2d 1, 5; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-49.

The dispute in this case centers on factors (2) and (3). With respect to factor (2), defendant argues that it is not required to establish "exclusive" control on the part of plaintiff. Rather, defendant asserts, only "control or management" must be demonstrated. Plaintiff contends that control and exclusive control mean the same thing. That meaning, according to plaintiff, is control from which it can be inferred that the negligence was not caused by someone other than himself. Plaintiff posits that in order to create this inference, he must have been in exclusive control at the time of the alleged negligence, regardless of which term is used.

It is true, as both parties point out, that this court has used both the term "exclusive control" and the term "management or control" in describing one of the necessary elements of *res ipsa loquitur*. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394; *Spidle v. Steward* (1980), 79 Ill. 2d 1, 5; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-49.) The question of the degree of control necessary in a *res ipsa loquitur* case has been addressed in detail by Dean Prosser, who concludes:

"This element usually is stated as meaning that the defendant must be in 'exclusive control' of the instrumentality which has caused the accident. Such control of course does serve effectively to focus any negligence upon the defendant; but the strict and literal application of the formula has led some courts to ridiculous conclusions \*\*\*. Of course this is wrong: it loses sight of the real purpose of the reasoning process in an attempt to reduce it to a fixed, mechanical and rigid rule. 'Control,' if it is not to be pernicious and misleading, must be a very flexible term. It must be enough that the defendant has the right or power of control, and the opportunity to exercise it \*\*\*. It is enough that he is under a duty which he cannot delegate to another \*\*\*." (Prosser, Torts sec. 39, at 219-20 (4th ed. 1971).)

Similarly, Restatement of Torts, Explanatory Notes sec. 328D, comment *g*, at 161 provides:

"*Defendant's exclusive control.* The plaintiff may sustain this burden of proof with the aid of a second inference, based on a showing of some specific cause for the event which was within the defendant's responsibility \*\*\*. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.

It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. He may be responsible, and the inference may be drawn against him, where he shares the control with another \*\*\*. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another \*\*\*. He may be responsible where he is under a duty to control the conduct of a third person \*\*\*. It may be enough that the defendant was formerly in control, at the time of the probable negligence \*\*\*. Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is

one which the defendant was under a duty to the plaintiff to anticipate or guard against."

As plaintiff asserts, the control that must be established is that necessary to support an inference that the defendant was negligent. However, as Prosser indicates, the requisite degree of control is not a rigid standard and, as comment *g* to section 328D of the Restatement explains, the key question is whether the probable cause is one which defendant was under a duty to the plaintiff to anticipate or guard against. This inquiry comports with the standard applied by this court in *Kolakowski*, a multiple-defendant, shared-control case, where we stated, "[T]he physicians and hospital, at the time of surgery, *each owed an independent duty* to the patient and exercised concurrent control over the operation and equipment." (Emphasis added.) (83 Ill. 2d 388, 396.) When the plaintiff establishes the necessary control, the defendant, of course, may dispel the inference that it exercised the control necessary for *res ipsa loquitur* to apply. See *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 396-97.

In adopting a flexible standard of control, we note that *res ipsa loquitur* is simply a rule of evidence relating to the sufficiency of plaintiff's proof. (Henderson & Pearson, The Torts Process 365 (1975).) If the three requisite factors are established, the doctrine simply gives rise to a permissible inference of negligence. It permits, but does not compel, the trier of fact to find that the defendant acted negligently. *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349; Illinois Pattern Jury Instruction, Civil, No. 22.01 (2d ed. 1971); Henderson & Pearson, The Torts Process 364 (1975).

The question in the instant case with respect to control is whether plaintiff exerted sufficient control over the repair of the boring mill to permit an inference that he was negligent. This is not a multiple-defendant case like *Kolakowski* or *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 154 P.2d 687, where a joint-control theory was applied to hold

defendants liable. Here, the factual question of control depends upon whether plaintiff, himself, exerted sufficient control over the boring mill despite the involvement of defendant's employees. In this regard, defendant asserts that plaintiff clearly had supervision and control over the repairs performed on the mill. Plaintiff concedes that he exercised supervision and direction over defendant's employees who helped with the repairs. Plaintiff claims, however, that defendant failed to prove that he was somehow responsible for the conduct of defendant's employees and that, as a result, he did not have control over the boring mill sufficient for application of *res ipsa loquitur*.

The record reveals that plaintiff was an independent contractor who was hired by defendant to supervise the repair of the boring mill. Plaintiff testified that he agreed to perform the repairs in a workmanlike manner. Plaintiff stated that several of defendant's employees under his supervision helped work on the mill in July through September 1976 and that plaintiff's contractor, plus at least one of defendant's employees, removed the gear-box cover just prior to his arrival and helped him work on the gear box in March 1977. Plaintiff testified on direct examination that he actually worked on the machine and that it was under his "supervision and control." On cross-examination, plaintiff stated, "The only work that was performed that I wouldn't have direct control over would be the work [on parts] that would be sent to the machine shop ***." However, plaintiff testified that, upon the part's return, he would supervise its assembly and placement into the boring mill. Plaintiff also declared that "[t]he assembly and the disassembly of the machine was under my control ***." When later asked if the assembly and disassembly of the boring mill was "strictly" done under his supervision and control, plaintiff responded, "Yes, sir. That's right. That's correct."

The damage to the boring mill occurred in the gear

box, which all witnesses agreed was accessible only when the cast-iron cover was removed. The cover was off while plaintiff was supervising repairs between July and September 1976 and in March 1977. The shop superintendent testified that the cover was not removed between September 1976, when plaintiff finished repairs, and March 1977, when repairs recommenced. Nor was the cover removed after plaintiff completed repairs in March 1977 until the damage occurred. Finally, plaintiff testified that he personally inspected the gear box before the cover was replaced and supervised its replacement in September 1976 and March 1977. He also stated that he did not check the oil pan in the bottom portion of the gear box before replacing the cover in March.

Notwithstanding plaintiff's argument that defendant's workers assisting him were not his "employees," the probable cause of the accident was one that plaintiff was under a duty to anticipate or guard against. Based upon plaintiff's contractual obligation as well as the degree of supervision and control he actually exerted over the gear box at the time of the probable negligence, we conclude that plaintiff's control was sufficiently established. Inasmuch as the record does not reveal that plaintiff presented sufficient evidence to dispel the inference of control on his part, the control requirement for application of *res ipsa loquitur* was properly demonstrated.

The third factor necessary for application of *res ipsa loquitur* is that the injury must not be due to action on the part of the claimant. Plaintiff argues that "it is just as reasonable to infer that a Precision employee was responsible for the foreign objects remaining in the gear box as it is to infer that Lynch was the cause." Defendant argues that this contention is untenable inasmuch as plaintiff, alone, had control and supervision over all repairs in connection with the gear box and inspected the gear box prior to reassembly.

Here, the question of defendant's contribution to the accident is allied to the existence of plaintiff's control. (See Prosser, Torts sec. 39, at 224 (4th ed. 1971).) As discussed above, plaintiff admitted that the assembly and disassembly of the boring mill were strictly under his control. Additionally, plaintiff testified that defendant's employees who helped him repair the mill were under his supervision. Further, even if one of defendant's employees assisting in the repairs, which were under plaintiff's control, left a tool in the gear box, plaintiff testified that before replacing the cover the gear box should always be checked. He stated that in September 1976 and March 1977 he inspected the inside of the gear box before replacing the cover and observed no foreign or unexpected material. However, plaintiff also testified that he saw no reason to inspect the oil pan area at the conclusion of the March repairs.

Thus, in light of plaintiff's supervision and control over the gear-box repairs and over defendant's employees, and in light of plaintiff's inspection of the gear box prior to replacement of the cover, we believe defendant has sufficiently demonstrated that the injury was not attributable to its own negligence. We note that the above factors are not utilized to demonstrate negligent supervision on plaintiff's part. Rather, these factors were employed to demonstrate plaintiff's control over the instrumentality and the reduction of the likelihood that defendant was responsible for the damage. Based upon (1) plaintiff's control, and (2) the elimination of defendant as a likely cause (along with the fact that the accident was due to negligence), the inference is created that plaintiff was negligent in his performance of the repair work, which included assembly and disassembly of the mill as well as final inspection of the gear box before replacement of the cover. Accordingly, we conclude that the necessary factors were established for application of *res ipsa loquitur* in the instant case.

Plaintiff next asserts that defendant failed to prove its

"lost profits" in connection with a contract between defendant and Westvaco Corporation for repair of a front-end log loader. However, as defendant points out, count II of its counterclaim essentially sought compensation for sums it expended for additional labor and material to perform the previously contracted work which would not have been necessary had the boring mill been available.

As indicated at the outset, Clifford Browning, the shop superintendent for defendant in November 1977, testified that, with the boring mill out of commission, defendant's employees had to engineer bars and portable units to complete the repairs on the Westvaco machine. Browning also testified that defendant was required to use 200 extra hours of machinist time at the rate of $16.50 per hour—a total of $3,300. No testimony was presented to dispute these figures. The rule that findings of a trial court sitting without a jury will not be disturbed unless manifestly erroneous is applicable to an assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149. See *Illinois Structural Steel Corp. v. Pathman Construction Co.* (1974), 23 Ill. App. 3d 1, 6-8; *Board of Education v. United States Fidelity & Guaranty Co.* (1969), 115 Ill. App. 2d 416, 430.) After examining the record, we conclude that the trial court's judgment awarding defendant $3,300 in damages under count II is supported by sufficient evidence and should not be disturbed.

For the above-stated reasons, the portion of the appellate court judgment reversing the judgment for defendant on its counterclaim is reversed and the trial court judgment is affirmed in its entirety.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*