GEORGE POLITAKIS *et al.*, Plaintiffs-Appellants, *v.* INLAND STEEL COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 82—1579

Opinion filed September 27, 1983.

Richard G. French, of French, Rogers, Kezelis & Kominiarek, P.C., Barry D. Goldberg, of Goldberg and Goldberg, and John G. Phillips, all of Chicago, for appellants.

Rooks, Pitts, Fullagar & Poust, of Chicago (John G. Poust and Wayne F. Plaza, of counsel), for appellee.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiffs, George Politakis, Chris Tsahas and Tasso Baris, brought this suit against defendant, Inland Steel Company, seeking compensation for the personal injuries they sustained on March 23, 1976, when the scaffold on which they were painting collapsed at defendant's mill in East Chicago, Indiana. Following a jury trial resulting in a verdict for defendant, plaintiffs raise these issues on appeal: (1) whether the trial court erred when it refused to give to the jury their instruction on *res ipsa loquitur*; (2) whether it was error for defense counsel to imply in closing argument that plaintiffs were negligent and caused the accident; and (3) whether it was error for defense counsel to state in closing argument that the incident was a pure accident.

The incident occurred in defendant's building which is used to store large coils of steel and in which were located two cranes, identified as No. 5 and No. 6. Crane No. 6, 32 feet wide and 100 feet long, travels the length of the building in a north-south direction. It consists of an operator's cab and a trolley, which runs in an east-west direction and from which a block and hook hang. A six-ton magnet, measuring $15\frac{1}{8}$ inches high and 66 inches wide, can be hung from the hook.

Plaintiffs were employed as painters by Pangere & Logan, who had contracted to paint defendant's equipment at the described location. On March 22, 1976, between 3 and 6 p.m., plaintiffs commenced erecting the scaffold to be used while painting crane No. 6. All of the equipment that was used in the scaffolding was supplied by Pangere & Logan. Pangere employees selected the method of erecting it and performed the work themselves.

The scaffold, which was supported by three cables, was erected by attaching the north cable with a choker[1] to the west wall of the building. The center cable was tied to the east side of the building and fastened to the west side by means of a choker. The choker was wrapped by plaintiffs around a square piece of metal on the west side of the building behind the crane runway beam. The cable continued along the west wall, was attached again to the structure, and then ran across the floor to the east wall to become the third cable. Devices called "come-alongs" were used to tighten the tension on the cables.

---

[1]A choker is a wire cable that is flexible and acts as an adjustable extension with a loop at each end. It is made of 3/8-inch woven steel. A shackle is used to close the choker.

Two wooden planks, weighing 100 pounds each, were hoisted on the cables and were approximately 30-35 feet off the ground.

During the night shift, one of defendant's employees, Glendell Walls, used the No. 6 crane. He knew about plaintiffs' rigging and while operating the crane from the cab, he received instructions from foreman David Comstock. Comstock testified that he had been on crane No. 6 in order to see how much space there was between the cable, block and magnet. Walls testified that Comstock told him to be careful about plaintiffs' cables.

Following Comstock's directions, Walls moved the trolley 12 to 15 feet east and then lowered the magnet to the floor. The magnet was detached and the hoist raised back up. Comstock testified that at no time did the magnet, or anything else, make contact with the center cable. At 6 a.m., plaintiffs began working on the scaffolding again. Twenty minutes later, the center cable broke and the scaffolding collapsed, severely injuring plaintiffs.

Metallurgical engineers on behalf of plaintiffs and defendant testified regarding the possible causes of the break in the choker cable. The choker has six strands and each strand is made up of 37 wires. Defendant's expert, Norris Yonker, testified that the wire rope, when originally made, had a breaking strength of 3.2 tons and that its breaking strength is lowered when the rope is tightened or stretched. Yonker stated that a visual examination of the choker cable revealed severe corrosion of the internal wires, sharp bends at the fractured ends and wire down to a knife-edge. In his opinion, the failure to the cable was gradual and not instantaneous.

Plaintiffs' expert, Lyle Jacobs, testified that the place where the break occurred on the choker cable was flattened and that there was abrasion or wearing away of the wires. Jacobs stated that in his opinion, although corrosion existed, it was minimal and did not contribute to the failure of the choker. He also stated that the breaking strength of the choker when manufactured was between 5 and 5¾ tons and that he believed that the choker was serviceable prior to March 22, 1976.

The trial court did not allow plaintiffs' proffered instruction on the doctrine of *res ipsa loquitur* to be submitted to the jury. Upon the jury returning a verdict in favor of defendant, plaintiffs filed this appeal.

I

■ Plaintiffs' primary contention in this appeal is that the trial court erred in refusing to instruct the jury as to the principle of *res*

*ipsa loquitur.*[2] The purpose of this doctrine is to allow proof of negligence by circumstantial evidence when the direct evidence of the cause of an accident is primarily within the knowledge and control of defendant. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305.) To take advantage of the theory, a plaintiff must prove that he was injured: (1) in an occurrence which would not have occurred in the absence of negligence; (2) by an instrumentality or agency under the management or control of defendant; and (3) under circumstances which were not due to any voluntary act or negligence on the part of plaintiff. Whether the doctrine applies in a given case is a question of law which the trial court must in the first instance decide. It does not apply unless a duty of care is owed by defendant to plaintiff. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 5, 402 N.E.2d 216.) It must be noted in this case that although the trial court was applying Indiana law, both parties agree that Indiana law does not materially differ from Illinois law on this subject.

It is apparent that the trial court's striking of defendant's affirmative defense of contributory negligence satisfies the third element needed for the instruction. As to the first requirement, defendant urges that this is not a case where the incident would not or could not have occurred in the absence of negligence. The trial court ruled that plaintiffs were not guilty of negligence and the jury, by its verdict, found that defendant was likewise not guilty of negligence. Defendant

---

[2]The rejected instruction reads as follows:

"Under our law the plaintiffs, George Politakis, Chris Tasahas [*sic*] and Tasso Baris may attempt to prove in either of two ways that defendant, INLAND STEEL COMPANY, was negligent. They may prove either what defendant, INLAND STEEL COMPANY, actually did or did not do, or, on the other hand, they may attempt to prove the following propositions:

FIRST: That the plaintiffs just before and at the time of the occurrence were using ordinary care for their own safety.

SECOND: That the plaintiffs were injured.

THIRD: That the injuries were received from a crane which was under the defendant's control or management.

FOURTH: That in the normal course of events, the injuries would not have occurred if the defendant had used ordinary care while the crane was under its control or management.

If you find that each of these propositions has been proved, the law permits you to infer from them that the defendant was negligent with respect to the crane while it was under its control or management. If you do draw such an inference your verdict must be for the plaintiffs if any injuries proximately resulted. But if, on the other hand, you find that any of these propositions has not been proved, or if you find that the defendant used ordinary care for the safety of others in its management of the crane, then your verdict should be for the defendant."

urges that this outcome lends credence to the theory which it argued at trial that it is possible no one was negligent, and that the cable simply parted because it was stretched over a girder edge. We need not address this argument because we base our affirmance of the trial court's ruling upon the inability of plaintiffs to prove the second element, which is control by defendant over the instrumentalities involved in the occurrence. *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.

Plaintiffs' theory of recovery in this suit was that defendant was liable for their injuries because its employees caused the crane or its appurtenances to hit the center cable of the rigging, which resulted in the collapse of the scaffolding. Plaintiffs urge that the *res ipsa* inference of negligence is applicable to this situation because their rigging was in a safe condition when they left defendant's mill at 6 p.m., and they had no control over, nor knowledge of, defendant's acts which occurred between that time and the time they arrived the following morning. With the aid of the *res ipsa* instruction, plaintiffs contend, the jury could have inferred that defendant's negligent acts damaged the cable and choker.

Here, the trial court heard differing accounts of the possible cause of the accident. Plaintiffs' theory was that defendant's employees' negligent operation of the crane and its appurtenances during the night shift, while plaintiffs were not present, caused the accident; on the other hand, defendant presented evidence that its employees in no way touched plaintiffs' scaffolding, and its expert suggested that it was the condition of the choker or its placement which could have caused the cable's failure. The evidence established that the choker flattened and separated around the crane girder beam edge. The choker, cable and installation of same was under the control and management of plaintiffs. While we recognize that mere conflict in the evidence does not bar the use of the *res ipsa* inference (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449), we find that plaintiffs' evidence was not sufficient to demonstrate that defendant did not exercise its duty of care toward plaintiffs. We agree with the trial court that based on the record, the evidence did not warrant the use of the *res ipsa* doctrine.

Plaintiffs strongly urge that the trial court's denial of their instruction was inexplicable in view of the evidence and the recent holding in *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569. In that case, the supreme court no longer utilized a requirement of defendant's *exclusive* control over the instrumentalities of the accident, but rather adopted the view that the term

be flexible, with the key question being " '*** whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.' " (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 273-74, quoting Restatement of Torts, Explanatory Notes, sec. 328D, comment *g*, at 161, and referring to Prosser, Torts sec. 39, at 219-20 (4th ed. 1971).) Plaintiffs claim that they showed that defendant had retained control of the building and premises where the accident happened; that it had a duty to inspect the premises initially at the start of plaintiffs' work and also to reinspect it for safety conditions; and that its employees were under a duty to refrain from using the crane while plaintiffs were in the process of painting it. Therefore, they conclude, they were entitled to the *res ipsa* instruction. On the other hand, the rigging installed by plaintiffs was under their control, and it was the separation of the choker which caused the incident.

A review of case law on this subject reveals that the *res ipsa* inference of negligence is not to be based upon a mere possibility that an event caused the harm which occurred, if the facts indicate otherwise. (*Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 136, 437 N.E.2d 334, *appeal denied* (1982), 91 Ill. 2d 570.) Here, plaintiffs did not meet their burden of proof in establishing more than a possibility that it was defendant's actions which caused the accident. This is not a case where one is able to positively identify which of the two instrumentalities caused the occurrence. (Contrast, *e.g., Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569, where it was evident that the act of leaving a chisel and file in a gear box was the cause of the injuries.) At issue in the trial of this case was whether defendant's employees struck plaintiffs' rigging, or whether the choker weakened and separated for the reasons described by the metallurgical testimony. There is a requirement that even where negligence is beyond all doubt involved in an accident, "it is still necessary to bring it home to the defendant." (Prosser, Torts sec. 39, at 218 (4th ed. 1971).) Prosser further states:

> "All that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not. It is enough that the court cannot say that the jury could not reasonably come to that conclusion. Where no such balance of probabilities in favor of negligence can reasonably be found, res ipsa loquitur does not apply." (Prosser, Torts sec. 39, at 218 (4th ed. 1971).)

Plaintiffs' instruction stated: "THIRD: That the injuries were re-

ceived from a crane which was under the defendant's control or management." Plaintiffs' evidence was not strong enough to warrant such an instruction. To permit such an instruction would legally decide the issue of probable cause by permitting an inference against defendant, thereby diluting plaintiffs' burden of proof. Plaintiffs' control of the rigging destroys the inference of negligence which *res ipsa* permits. In the light of ordinary experience, the incident here does not give rise to an inference that someone must have been negligent. The trial court was thus correct in its refusal to give the instruction to the jury.

## II

■ Plaintiffs urge that defendant committed prejudicial error in its closing argument. Based on our review of the record, we disagree.

### A

Plaintiffs contend that it was prejudicial error for defense counsel to repeatedly raise the issue of contributory negligence during closing argument after the trial court had struck this affirmative defense. Plaintiffs acknowledge that defense counsel did not directly accuse plaintiffs of negligence or of causing their own injuries; nevertheless, the numerous unobjected to comments (such as, "I am not even saying it is the fault of the plaintiffs"), had an identical impact.

This case involved the issue of proximate cause and in the face of being accused of committing a negligent act which caused the accident, defense counsel argued to the jury defendant's version of the proximate cause of the accident. Because this theory included the manner in which the cable had been attached, plaintiffs' actions in stringing the cables would necessarily be discussed. We are not convinced from our review of the record that the comments of defense counsel, dispersed throughout a lengthy closing statement, had the effect claimed by plaintiffs. The jury was only instructed on a pure negligence theory, and was never told that plaintiffs' possible contributory negligence would bar their recovery.

### B

In regard to plaintiffs' additional claim that defense counsel suggested that this occurrence was a pure accident, defendant notes that there is no standard jury instruction in either Illinois or Indiana to cover an unavoidable accident. Further, the comments to the Illinois Pattern Jury Instructions (IPI), Civil No. 12.03, Comment, at 74 (2d ed. 1971), suggest that the matter be left to argument of counsel. Again, we conclude that defense counsel was merely arguing his the-

ory of proximate cause to the jury and plaintiffs were not prejudiced.

For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

Affirmed.

PERLIN and HARTMAN, JJ., concur.