IRENE R. NAPOLI, Plaintiff-Appellant, v. HINSDALE HOSPITAL *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—2814

Opinion filed April 24, 1991.

Joseph J. Miroballi, of Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Kathleen M. Krist, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff Irene Napoli appeals from an order of the circuit court granting summary judgment for Hinsdale Hospital, the defendant in

plaintiff's negligence action. Plaintiff argues that because defendant's negligence could be inferred under the doctrine of *res ipsa loquitur*, the court erred in granting defendant's motion for summary judgment.

On February 28, 1986, plaintiff, aged 78, was taken to Hinsdale Hospital for treatment of pneumonia. When plaintiff was examined at the hospital, a laceration was discovered on her lower left leg. Plaintiff suffered permanent injury to her leg as a result of the laceration.

In December 1986, plaintiff filed suit against Hinsdale Hospital charging the hospital with negligence in connection with her injury. In response to a motion by the hospital, plaintiff's complaint was stricken pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). An amended complaint was filed July 22, 1987. A second amended complaint was filed November 22, 1988. In her second amended complaint, plaintiff sought recovery under the theory of *res ipsa loquitur*, alleging that the injury was not caused by any act or negligence on her part; that at the time she was injured she was under the exclusive management and control of the hospital; and that the injury would not have occurred in the ordinary course of events or in the absence of negligence on the part of the hospital.

Between August and November 1988, discovery depositions were given by plaintiff; her daughter, Norma Jaffe; and Susan Smith and Bernadette Sims, nurses at Hinsdale Hospital.

At her deposition, Jaffe stated that at the time of the accident, plaintiff lived with Jaffe and her husband in their house in Downers Grove, Illinois. Jaffe stated that her mother had been in ill health and that on the morning in question, Beverly Peck, a visiting nurse from Hinsdale Hospital, examined plaintiff at home and suggested that she be taken to the hospital. Jaffe stated that she and Peck helped plaintiff walk from a "utility room" in the house to an attached garage, where plaintiff got into the car. Jaffe stated that she did not notice her mother bump her leg while getting into the car and that her mother did not complain about her leg during the drive to the hospital.

When they reached the hospital, Jaffe went inside and asked for help in transporting her mother from the car to the hospital. A male nurse and two female nurses came to the car with a wheelchair. One of the female nurses opened the car door, lifted plaintiff's legs out of the car, and helped her to the wheelchair. The male nurse then pushed the wheelchair to the hospital entrance.

Once inside the hospital, plaintiff was taken to the emergency room, while Jaffe was directed to a desk and asked to fill out some forms. Jaffe stated that she did not see her mother bump her leg or hear her complain about pain in her leg while being taken from the car to the hospital.

Jaffe stated that after filling out the forms she went to the emergency room, where she saw her mother lying on a cart. When Jaffe entered the room, one of the nurses asked her how plaintiff had cut her leg. Jaffe stated that she asked her mother what had happened, but that her mother did not respond. Jaffe also stated that she was not present when her mother was taken from the wheelchair and placed on the cart.

At plaintiff's deposition, plaintiff stated that she did not know when she injured her leg. Plaintiff stated that on the morning of February 28, she was helped to the car by Jaffe and Peck and that she did not remember bumping her leg as she was getting into the car. After she arrived at the hospital, two nurses helped plaintiff from the car and into a wheelchair. The nurses then wheeled plaintiff into the hospital emergency room. Plaintiff stated that she did not bump her leg during that time.

In the emergency room, a nurse assisted plaintiff from the wheelchair to a cart. Plaintiff stated that a stool was placed in front of the wheelchair and that the nurse helped her step onto the stool. Plaintiff did not remember bumping her leg at this time, but she stated that she felt pain in her leg when she stepped onto the stool. Plaintiff stated that she first experienced this pain between stepping on the stool and getting onto the cart.

Susan Smith, a nurse at Hinsdale Hospital, stated at her deposition that on the morning of February 28, Jaffe entered the emergency room and told her that plaintiff needed help getting out of the car. Smith, Bernadette Sims, and Craig Peterson went out to the car and helped plaintiff into a wheelchair.

In the emergency room, Smith, Sims, and Peterson lifted plaintiff out of the wheelchair and placed her on a cart. As Smith and Sims began to undress plaintiff, they noticed blood on her sock and a laceration on her leg. Smith stated that plaintiff was wearing ankle socks, that the socks were doubled over, that there was blood only on the layer of the sock that was next to the skin, and that the blood and the cut were not visible until the sock was removed.

When Smith asked plaintiff how she cut her leg, plaintiff replied that she did not remember. Smith stated that she did not think the injury occurred in the emergency room and that because the sock was

doubled over, it could have happened at any prior time, without anyone noticing.

In her deposition testimony, Bernadette Sims stated that when plaintiff arrived at the hospital, she and Smith went out to plaintiff's car and assisted her into a wheelchair. Sims stated that she did not notice blood on plaintiff's leg or sock while assisting her, but that she was more concerned with plaintiff's breathing. Once inside the hospital, Sims and Smith assisted plaintiff from the wheelchair to a cart and began to undress her. Sims stated that it was at this point that she noticed blood on plaintiff's sock. However, Sims could not recall anything further about plaintiff's injury.

After the depositions were completed, defendant filed a motion for summary judgment. Pointing out that plaintiff had stated in her deposition that she did not know how she injured her leg, defendant argued that *res ipsa loquitur* could not be applied to establish its negligence because plaintiff could not demonstrate that the injury was caused by an instrumentality under the defendant's exclusive control or that defendant was in possession of evidence not possessed or easily obtained by plaintiff.

Plaintiff, in response, argued that *res ipsa loquitur* was applicable because the facts presented established that at the time of her injury she was in the exclusive control of defendant, that she was incapable of causing her own injury, and that the injury was caused by an instrumentality of defendant. On April 20, 1989, following a hearing, the trial court granted defendant's motion for summary judgment.

In August 1989 plaintiff filed a motion for reconsideration. Attached to the motion were affidavits from Beverly Peck and Dr. Hyman Lans. Peck's affidavit stated that she saw plaintiff at home on the morning of February 28, 1986, and that plaintiff was in ill health, debilitated, and incapacitated. Peck also stated that she did not observe any lacerations on plaintiff's legs or ankles prior to plaintiff's leaving home. Lans' affidavit stated that, in his opinion, a laceration of the type suffered by plaintiff would not have occurred unless there had been a failure to exercise proper management and control over her.

In its response to plaintiff's motion for reconsideration, defendant argued that the affidavits should not be considered because plaintiff had failed to file the affidavits in her response to defendant's motion for summary judgment and had not offered any reasonable explanation of why the affidavits could not have been filed earlier. Defendant later filed a second affidavit from Beverly Peck in which she stated that she had been available continuously since 1988.

Plaintiff's motion for reconsideration was denied and this appeal followed.

■ In *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305, the Illinois Supreme Court pointed out that the purpose of the doctrine of *res ipsa loquitur* was to allow proof of negligence by circumstantial evidence when the direct evidence concerning the cause of an injury is primarily within the knowledge and control of the defendant. The court stated:

"When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care." 32 Ill. 2d at 449.

■ Thus, in order to invoke the doctrine of *res ipsa loquitur*, a plaintiff must demonstrate that she was injured, in an occurrence that would not have taken place in the absence of negligence, by an instrumentality or agency under the control of the defendant. (*Dyback v. Weber* (1986), 114 Ill. 2d 232, 500 N.E.2d 8; *Metz*, 32 Ill. 2d at 449.) In addition, it must be shown that the injury was not due to any voluntary act or negligence on the part of the plaintiff. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569; *Politakis v. Inland Steel Co.* (1983), 118 Ill. App. 3d 249, 454 N.E.2d 811.) Whether the doctrine is applicable is a question of law which must be decided by the trial court. (*Metz*, 32 Ill. 2d at 449; *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 400 N.E.2d 934.) This determination may be made at the pretrial motion stage. *Walker v. Rumer* (1978), 72 Ill. 2d 495, 381 N.E.2d 689; *Greenberg v. Michael Reese Hospital* (1979), 78 Ill. App. 3d 17, 396 N.E.2d 1088, *aff'd in part & rev'd in part* (1980), 83 Ill. 2d 282, 415 N.E.2d 390.

In arguing that the trial court properly granted its motion for summary judgment, defendant contends that the doctrine of *res ipsa loquitur* is inapplicable because plaintiff failed to establish how or when she cut her leg. Defendant argues that plaintiff's injury could have occurred at home, in the garage, or in the car *en route* to the hospital. Defendant further argues that plaintiff also failed to establish that it possesses any evidence about the accident that is unavailable to plaintiff.

Plaintiff contends that *res ipsa loquitur* is applicable because she established both the precise time that she sustained her injury and that she was under the exclusive management of defendant and its

agents at that time. We find nothing in the record to support plaintiff's contentions.

The deposition testimony in the record clearly demonstrates that the time and cause of plaintiff's injury is unknown. At her deposition, plaintiff flatly stated that she did not know when she injured her leg. Plaintiff stated that she did not remember bumping her leg as she was getting into the car to go to the hospital and plaintiff's daughter did not notice plaintiff bump her leg at this time. Plaintiff also stated that she did not bump her leg during the time that she was being helped from the car and into the hospital by Sims and Smith, and her daughter did not see plaintiff bump her leg while being transported from the car to the hospital. Finally, plaintiff stated that she did not remember bumping her leg as she was getting out of the wheelchair and onto the cart.

No one at the hospital had any knowledge of how or when plaintiff injured her leg. Nurse Smith stated that plaintiff's injury could have occurred at any time prior to plaintiff's arrival at the hospital and that plaintiff's sock would have concealed the bleeding. Nurse Sims stated that she did not notice an injury when she helped plaintiff into the hospital, but she also stated that she was more concerned with plaintiff's breathing.

■ Before *res ipsa loquitur* can be applied, it must be shown that the injury can be traced to a specific instrumentality or cause for which the defendant is responsible or that the defendant was responsible for all reasonable causes to which the accident could be attributed. (W. Keeton, Prosser & Keeton on Torts, §39, at 248 (5th ed. 1984).) Where there are differing possible causes of an accident and a plaintiff cannot establish that it was defendant's actions which caused the accident, *res ipsa loquitur* will not be applicable. *Politakis*, 118 Ill. App. 3d 249.

In *Politakis*, plaintiffs filed suit seeking to recover for injuries suffered when a cable broke causing the scaffold on which they were working to collapse. Plaintiffs alleged that the accident was caused by defendant's crane striking the cable. Defendant denied that the crane struck plaintiff's cable, claiming that it was the condition of the cable or plaintiffs' improper placement of it that caused the accident. After a jury returned a verdict for defendant, plaintiffs appealed arguing that the trial court erred in refusing to give a *res ipsa loquitur* instruction. This court affirmed, holding that because there was a possibility that the accident could have been caused by an instrumentality under the control of plaintiffs, *res ipsa loquitur* was inapplicable. See

also *Bernardi v. Chicago Steel Container Corp.* (1989), 187 Ill. App. 3d 1010, 543 N.E.2d 1004.

In the present case, plaintiff argues that *Politakis* is not controlling and that, instead, this court should rely on *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 531 N.E.2d 413. In *Barkei*, doctors discovered a swelling on the back of plaintiff's head four days after her birth in Delnor Hospital. Plaintiff was later diagnosed as suffering from brain damage and spinal cord injury. Plaintiff's parents filed suit against Delnor alleging general negligence under a *res ipsa loquitur* theory. After a jury returned a verdict for plaintiff, Delnor appealed arguing that there was insufficient evidence that plaintiff was under Delnor's control when the injury occurred and that plaintiff's injuries could be attributed to any one of several persons including plaintiff's parents or the doctor who delivered her.

In affirming the jury's verdict for plaintiff, the appellate court noted that plaintiff could not have had knowledge or control of any of the possible causes of the trauma she suffered and could not eliminate any one of them with certainty. The court stated that under such circumstances, the question was not whether all other causes of plaintiff's injury had been ruled out, but whether there was evidence that made it more probable than not that she was under Delnor's control when she was injured. 176 Ill. App. 3d at 689-90.

We find that plaintiff's position bears more similarity to that of the plaintiffs in *Politakis* than that of the plaintiff in *Barkei*. Here, plaintiff has not identified the time of her injury or the instrumentality that caused her injury; nor has she demonstrated that defendant's actions were responsible for all reasonable causes to which the accident could be attributed. Although plaintiff does not recall bumping her leg prior to her arrival at the hospital, she also does not recall bumping it after her arrival. Thus, while it is possible that plaintiff's injury could have been caused by an instrumentality controlled by the defendant, it is equally possible that the injury could have occurred prior to plaintiff's arrival at the hospital.

Plaintiff claims in her briefs on appeal that she has established that her injury occurred when she was assisted out of the wheelchair and onto the emergency room cart. However, plaintiff's deposition testimony states only that she felt pain as she moved from the stool to the cart. Nothing in the deposition supports the claim she now makes that it was at this time that she suffered her injury. Moreover, it was plaintiff's testimony that she did not remember bumping her leg during this time.

█ In arguing that her injury could not have occurred prior to her arrival at the hospital, plaintiff relies on Beverly Peck's affidavit, in which Peck stated that she observed no injury to plaintiff's leg before plaintiff left for the hospital. We find that in light of Smith's statement that plaintiff's sock covered the laceration and that neither the blood nor the cut was visible until the sock was removed, Peck's affidavit is not persuasive. We also find that even if the affidavit could be considered as establishing that it was more probable than not that plaintiff's injury occurred after her arrival at the hospital, the trial court was not required to take it into consideration because of plaintiff's failure to file the affidavit in a timely manner. See *Hall v. De-Falco* (1988), 178 Ill. App. 3d 408, 533 N.E.2d 448; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.

█ In conclusion, we find that plaintiff has failed to establish that the possibility that her injury occurred after her arrival at the hospital is any greater than the possibility that it occurred before her arrival, and that, therefore, the doctrine of *res ipsa loquitur* is inapplicable. Accordingly we affirm the trial court's entry of summary judgment for defendant.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.