(No. 87-CC-2077– <span style="background:black">▮▮▮▮▮</span>

JOHN RATCLIFF, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 22, 1995.*

STEPHEN J. MCMULLEN, for Claimant.

JIM RYAN, Attorney General (ANDREW N. LEVINE, Assistant Attorney General, of counsel), for Respondent.

OPINION

RAUCCI, J.

This cause comes before the Court on Claimant John Ratcliff's complaint alleging negligence against the Respondent State of Illinois. The claim arises out of an incident occurring on September 16, 1986, when Claimant was struck by a basketball backboard and hoop while incarcerated at Joliet Correctional Center (hereinafter "JCC").

The hearing was conducted on May 17, 1994. Claimant testified and offered four exhibits into evidence, which were admitted into the record. Respondent presented one witness, Bruce Burger, and no exhibits.

John Ratcliff testified on his own behalf. On September 16, 1986, he was in the yard playing basketball and was injured by the backboard. He was waiting for a rebound and the backboard fell on top of his head and hand knocking him unconscious. He did not touch the backboard or hoop before it fell.

His hand and head bled. He has a scar on his left hand, several scars on his head and on his right knee. He had pain in his neck, back, head and arms. He was taken to Silver Cross Hospital.

Claimant identified six-page claimant's group exhibit no. 1 from Silver Cross Hospital. He received a shot to ease some pain and stitches were placed in his hand, head and knee. X-rays were taken. Claimant was not admitted overnight to the hospital but was treated in the emergency room. Based upon the representation that claimant's group exhibit no. 1 was being offered only to support the proposition that Claimant was admitted for emergency services at Silver Cross Hospital, it was admitted over objection of Respondent.

The next day he went to the infirmary at JCC because he was experiencing pain and dizziness. He was in the infirmary for a week.

Claimant was released from incarceration on May 25, 1987. He went to Ingalls Memorial Hospital because his left hand was throbbing, his back was hurting and his legs and knees were swelling where he had scars. He received pain pills and they took x-rays. Claimant identified claimant's group exhibit no. 4 (six pages) as the bill from

Ingalls Memorial Hospital. Cl. ex. no. 4 was admitted over objection, to demonstrate that Claimant went for medical treatment the one time at Ingalls.

Claimant continued to experience pain in his neck, arm and hand, even until the present. The injuries left permanent scars on his left hand and forehead.

Upon cross-examination, the Claimant stated that he was at JCC for about one and a half weeks prior to the incident, but it was his first day in the yard. He had finished playing one game, lasting approximately 20 minutes. Prior to the backboard falling, he was standing, shooting and rebounding for approximately five minutes while he waited for the second game. During all this time, he did not notice anything unusual about the backboard. Claimant was not aware of any complaints about the backboard.

Approximately one week after the incident, Claimant was transferred to Stateville Correctional Center. He went to doctors at Stateville three times a week for a period of time that is indiscernible from the record.

Bruce Burger, executive assistant to the warden at JCC, testified on behalf of Respondent. At the time of the incident, he was a correction leisure activities specialist 5 "CLASS V." He was responsible for providing recreation for the inmate population including non-structured activities referred to as "the yards." Inmates can play pick-up games of basketball. He supervised seven employees. He and his subordinates spent time in the yards.

Security officers, administrators and inmates would tell him and his subordinates if something was needed. He recalled that the wooden backboards were replaced with metal ones in the late 1970s, or in 1980. Work orders for maintenance and repairs within JCC are disposed of after two years.

He never received any complaints about the basketball hoops on or before September 16, 1986.

On cross-examination, Mr. Burger acknowledged that he saw that the backboard was down. The metal backboards had been welded onto their poles.

Claimant argues that Respondent had control of the basketball backboard which fell and injured Claimant and that we are presented with a classic case of *res ipsa loquitur*. Respondent has not rebutted the presumption and has not introduced evidence that somebody else caused it to fall. Claimant has scars, and experienced pain and suffering. He has a continuing problem of weakness in his arm. He had bills of $49 from Ingalls Memorial Hospital and $40 for physician Ardena's bill.

Respondent asserts that the case comes down to the issue of notice. During Claimant's 20-minute game no one noticed anything wrong with the backboard. Mr. Burger was not aware of any complaints about the backboards prior to, or on, the day in question. Respondent argues that there is no liability if the State does not have actual or constructive notice of a defect.

The parties did not cite any cases, or other legal authority, to support their positions.

To prevail on his claim, Claimant must prove by a preponderance of the evidence that the State had a duty to protect Claimant from harm, that the State negligently breached that duty, and that the negligence was the proximate cause of Claimant's injury. (*Starks v. State* (1992), 45 Ill. Ct. Cl. 285.) Although the Court has held that the State owes a duty of protection and must exercise reasonable care toward a prisoner, it is not an insurer of safety of prisoners. *Starks*, at p. 290.

In *Thornton v. State* (1993), 45 Ill. Ct. Cl. 272, the Court found that plumbing facilities were under the

management of Respondent and that the uncontradicted evidence indicated that Respondent had notice of the defective toilet causing the Claimant's injury. The *Thornton* Court stated that:

"When an injury has been caused by something under the management of the Respondent, and the injury is such that in the ordinary course of events it would not have happened if Respondent had exercised proper care, the accident itself affords reasonable evidence, in the absence of an explanation, that the accident arose from the Respondent's want of due care." *Thornton*, at 275.

The *Thornton* Court concluded that it was clear that Respondent was aware of the defective condition of the porcelain toilet and made an award.

The doctrine of *res ipsa loquitur* does not relieve the Claimant of the burden of proving negligence. (*Rutledge v. State* (1991), 44 Ill. Ct. Cl. 257, 259.) To avail himself of the *res ipsa loquitur* doctrine, the Claimant must demonstrate that the injury is the kind which does not occur in the absence of negligent acts, was caused by an entity or instrumentality within the exclusive control of the defendant, and was not due to any voluntary act or neglect on the part of Claimant. (*Rutledge*, at 258-259, citing *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266.) In *Rutledge*, hot oil emitted from a State chimney landed on Claimant's vehicle causing damage. Claimant Starks asserted that the State used a malfunctioning furnace because of incomplete burning of the oil. The Court denied the claim because of lack of evidence presented by Claimant that the State breached a duty, or to support an inference for application of the *res ipsa loquitur*. *Rutledge*, at p. 259.

In the case at bar, Claimant has not offered any evidence that the Respondent had actual or constructive notice of a defective or dangerous condition in relation to the backboard. The evidence clearly shows that no one,

including Claimant, was aware of a dangerous or defective condition in relation to the backboard. In the event Respondent did not have actual or constructive knowledge of a dangerous or defective condition, it is not liable. *Secor v. State* (1991), 44 Ill. Ct. Cl. 215.

The doctrine of *res ipsa loquitur* allows the trier of fact to draw an inference of negligence from circumstantial evidence. It is simply a rule of evidence relating to the sufficiency of plaintiff's proof. It permits, but does not compel, the trier of fact to find that defendant acted negligently. *Lynch*, 93 Ill. 2d at 273, 443 N.E.2d at 573.

Claimant has not presented sufficient evidence to support a conclusion that the doctrine of *res ipsa loquitur* should apply to this case. There is no evidence that the entity or instrumentality which caused the injury to Claimant was within the exclusive control of the Respondent. The backboard was not under the Respondent's exclusive control because inmates were using it to play basketball and there are potentially numerous events by Claimant or other third parties that may have affected the physical integrity of the backboard.

It is therefore ordered, adjudged and decreed that this claim is dismissed and forever barred.