(No. 96-CC-1633– )

DAVID HENDERSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 5, 2001.*

DAVID HENDERSON, *pro se.*

JIM RYAN, Attorney General (DIANN K. MARSALEK, Assistant Attorney General, of counsel), for Respondent.

194

## OPINION

FREDERICK, J.

Claimant, David Henderson, filed his claim sounding in negligence on November 27, 1995. Claimant, an inmate with the Illinois Department of Corrections ("DOC"), seeks judgment for $3,000 from Respondent for an injury he suffered while he was a resident of the Centralia Correctional Center ("Centralia"). Claimant alleges his injury was the result of negligence on the part of Respondent's employees.

A hearing was held at Dixon Correctional Center before a Commissioner of the Court. Claimant filed a brief, but Respondent was barred from filing a brief after failing to file a brief within the appropriate time period.

### The Facts

On April 18, 1995, Claimant was assigned to the 1:00 p.m. to 9:00 p.m. shift in the Dietary Department at Centralia as a salad preparation man. Claimant performed his duties primarily in the kitchen and the salad and meat preparation room at Centralia. The entrance to the prep room was located at the southwest corner of the kitchen. A storage shed containing pots and pans was located near the eastern wall in the southern portion of the kitchen. In the center of the kitchen was an area which contains

seven large cooking pots and two coffeepots. Two of the cooking pots and the two coffeepots are located in the northern portion of the cooking area. Five eighty-gallon cooking pots are located in the south portion of the cooking area. These cooking pots were adjacent to a walkway on the south side of the area which was used by workers in the prep room when pots and pans were needed from the storage area. The south walkway, which was approximately eight feet wide, was the shortest route between the prep room and the storage area. Workers in the prep room also could have used a longer route around the northern portion of the cooking area.

The cooking pots had lids with activators which contain a spring and compression valve designed to prevent pressure from building up in the pots when contents within the pots are boiling. If the lids were operating properly, steam would go straight up into a ventilation system when the lids were opened. The lids were designed to release to prevent pressure from building so that steam and liquid within the pots would not spew out of the pots.

Claimant testified that on April 18, 1995, at approximately 2:00 p.m. or 3:00 p.m., he was performing his duties as a salad preparation man. While performing his duties, he walked on the south walkway to the storage area to get some pans. At that time some cooks were standing by the five cooking pots adjacent to the south walkway. As Claimant passed the cooking pots, some steam and hot water shot from a pot and burned his left forearm. He believes the steam and water came from the third pot. After Claimant was burned, he reported to a supervisor who told Claimant that after a head count was taken, he would be taken to the health care unit. As he was waiting to be taken to receive treatment, Claimant was told by Walter Beckwith, who was cooking at the pot from which Claimant

believes the steam and water escaped, that the lid on the pot was broken. After Claimant received treatment for the burn, he returned to finish his shift. Claimant's burn was a first degree burn and caused pain. Claimant has no permanent injury.

Samuel R. Askew, the Public Service Administrator in charge of the Dietary Department at Centralia, was presented as a witness for Respondent. He testified that the cooking pots being used in 1995 were still in use at the time of the hearing and that he was not aware of any problems with spillage or splashing from those pots. He also testified that audits of the kitchen were conducted on a yearly basis and that he was not aware of any audits indicating any problems with cooking pots in 1995. Mr. Askew further testified that he was aware of the incident involving Claimant and that he was not aware of any prior injuries occurring in a manner similar to that which Claimant has alleged happened to Claimant.

On cross-examination, Mr. Askew testified that he wrote a memorandum about Claimant's accident dated December 28, 1995, that is contained in the Departmental Report, in which he states in regard to the cooking pots, "It is factual that the actuators on the lids are aged somewhat and in need of replacement, but they still would not cause spewing steam or liquids beyond a few inches at the boiling point." Mr. Askew also acknowledged that if the lid of a cooking pot was raised while the pot is cooking, boiling bubbles were going to come out.

In response to a question asked by the Commissioner, Mr. Askew testified that Claimant's Exhibit No. 10 was a portion of a report of an in-house audit that was conducted at Centralia. The auditor inspected the Dietary Area at Centralia on October 16, 1995. Page 12 of the report states in pertinent part: "Main Kitchen Area:

The steam kettles have plastic string tying the lids up. It was explained that the lids do not stay up. As the steam kettles emit heat, this auditor questions the safety of plastic string holding the lids up." Mr. Askew acknowledged that the steam kettles described in the report were the cooking pots in the kitchen where Claimant was working.

## The Law

Respondent owes a duty to inmates of its penal institutions to provide them with safe working conditions in which to perform their assigned work. (*Jones v. State* (1993), 45 Ill. Ct. Cl. 90, 92.) To prevail, Claimant must prove by a preponderance of the evidence that Respondent breached its duty of care and the negligence of Respondent was the proximate cause of Claimant's injury. (*Rogers v. State* (1991), 44 Ill. Ct. Cl. 149, 152.) Claimant must also prove that Respondent had actual or constructive knowledge that the dangerous condition which caused the injury existed prior to the accident. See *Ratcliffe v. State* (1995), 48 Ill. Ct. Cl. 137, 141-142.

The memorandum of Respondent's witness, Mr. Askew, indicates the actuators on the lids of the cooking pots were "aged and somewhat in need of replacement, but still would not cause spewing steam or liquids beyond a few inches at the boiling point." Mr. Askew acknowledged that if the lid of a cooking pot was raised while the pot was cooking, boiling bubbles would come out. Respondent's in-house audit indicates that the lids on the cooking pots were being tied by plastic string and that the person who conducted the audit was concerned about the safety of such a procedure. Though the audit was conducted approximately six months after Claimant's accident, the information in the report and the memorandum of Mr. Askew indicate to the Court that the worn condition of the lids

appears to have existed for a sufficient period of time that Respondent either knew or should have known there was a dangerous condition with the lids at the time Claimant was injured. The Court, therefore, finds that the lids on the cooking pots were not in proper working condition and that this constituted a dangerous condition of which Respondent was aware or should have been aware. The Court further finds that Claimant has proven that his injury was proximately caused by water or steam escaping from one of the cooking pots. By failing to properly maintain the lids on the cooking pots, Respondent breached its duty to provide Claimant with safe working conditions to perform his assigned work. Respondent is, therefore, liable to Claimant for his injury.

### Damages

As a result of the accident, Claimant suffered a burn approximately two inches by one inch on his left forearm. Claimant testified that the wound was cleansed, treated with Silvadene dressing, and wrapped in the healthcare unit at Centralia, and that this procedure was repeated approximately eight times. Claimant maintains that he suffered a second degree burn. However, Claimant's medical records and testimony at the hearing from Annette Widener, a registered nurse at Dixon, indicate that Claimant suffered a first degree burn. Claimant testified that he did not miss any work due to the injury and that he did not incur any medical expenses. He also testified that the injury did not affect his daily activities and should not affect him in any way in the future. The Court, therefore, finds that the sum of Five Hundred Dollars ($500) compensates Claimant for the injuries he has proven. *Ross v. State* (1994), 46 Ill. Ct. Cl. 423.

For the foregoing reasons, it is the order of the Court that Claimant be and hereby is awarded the sum of

Five Hundred Dollars ($500) in full and complete satisfaction of his claim.